KRISTEN DIGIACOMO vs. METROPOLITAN PROPERTY &
CASUALTY INSURANCE COMPANY.

No. 05-P-525.

Middlesex. January 12, 2006. - May 24, 2006.

Present: KANTROWITZ, COHEN, & GRAHAM, JJ.

*Insurance,* Motor vehicle personal injury protection benefits. *Statute,* Construction.

Where an employee who had only worked ten weeks during the entire year preceding a motor vehicle accident that temporarily disabled her brought an action pursuant to G. L. c. 90, § 34M, to enforce the right to payment of personal injury protection benefits under a standard automobile insurance policy, she was entitled to have her average weekly gross wage calculated by dividing her gross earnings by the number of weeks that she actually was employed during the preceding year, rather than by dividing her gross earnings by fifty-two. [345-349]

CIVIL ACTION commenced in the Natick Division of the District Court Department on October 24, 2002.

The case was heard by *Sarah B. Singer,* J., on motions for summary judgment.

*Glenda H. Ganem* for the defendant.

*Michael M. Kaplan* for the plaintiff.

COHEN, J. The plaintiff, Kristen DiGiacomo, filed this action pursuant to G. L. c. 90, § 34M, to enforce her right to the payment of personal injury protection (PIP) benefits under a Massachusetts automobile policy issued by the defendant, Metropolitan Property & Casualty Insurance Company (Metropolitan). Metropolitan did not dispute DiGiacomo's entitlement to PIP benefits, but calculated them differently from DiGiacomo. On the parties' cross motions for summary judgment, a judge of the District Court ruled that DiGiacomo's calculation was correct, and that she was entitled to receive $627 in PIP benefits for wages that she lost while disabled from her injuries. On

Metropolitan's appeal to the Appellate Division of the District Court, the judge's decision was affirmed.

Metropolitan now appeals to this court. The sole question presented is how to compute DiGiacomo's "average weekly gross wage or equivalent for the year ending on the day immediately before the accident," as provided by the terms of the policy and G. L. c. 90, § 34A, given that DiGiacomo had entered the labor force only about ten weeks before the accident. Metropolitan reads the policy and the governing statute to require that DiGiacomo's gross earnings for the year preceding the accident be divided by fifty-two regardless of the number of weeks that she worked during that year. DiGiacomo contends, and the judge and the Appellate Division agreed, that DiGiacomo's average weekly wage must be established by dividing her gross earnings by the number of weeks that she actually was employed during the preceding year. We affirm.

*Background.* The parties have agreed to the relevant facts. DiGiacomo finished high school in May, 2002, and was hired by United Parcel Service (UPS) later that month. Before taking her job with UPS, DiGiacomo had never been employed. On July 23, 2002, while riding as a passenger in a car insured by Metropolitan, DiGiacomo was injured in an automobile accident. As a result of her injuries, DiGiacomo lost approximately five weeks of wages, remaining out of work on doctor's orders from July 23, 2002, through August 28, 2002.[1] Between July 23, 2001, and July 23, 2002, the year immediately preceding the accident, DiGiacomo's only employment was her work for UPS. During that approximately ten-week period, she earned a total of $1,766.67[2] in gross wages.

The policy in question is a standard Massachusetts automobile policy, seventh edition. "The policy is one prescribed by statute, with standard language controlled by the Division of Insurance." *Jacobs* v. *United States Fid. & Guar. Co.*, 417 Mass. 75, 76 (1994). As required by G. L. c. 90, § 34M, and as defined in

---

[1]It is undisputed that DiGiacomo was not entitled to benefits under a wage continuation plan.

[2]Because the parties stipulated to this figure, we adopt it, as did the Appellate Division, despite the existence of some discrepancies in both the record and the parties' calculations.

§ 34A, part 2 of the policy provides PIP benefits, not to exceed $8,000, to any covered individual who has been injured or killed in an auto accident. Of particular relevance to the parties' dispute is the following policy language: "If an injured person is out of work because of the accident, we will pay lost wages *up to 75% of his or her average weekly gross wage or equivalent for the year ending on the day immediately before the accident.*" (Emphasis supplied.)

This provision is adapted from G. L. c. 90, § 34A, which states, in relevant part, that PIP coverage will "provide for payment . . . in the case of persons employed or self-employed at the time of an accident of any amounts actually lost by reason of inability to work and earn wages or salary or their equivalent, but not other income, that would otherwise have been earned in the normal course of an injured person's employment," limited to "an amount that will provide *seventy-five per cent of any such person's average weekly wage or salary or its equivalent for the year immediately preceding the accident.*" (Emphasis supplied). G. L. c. 90, § 34A.

DiGiacomo submitted a timely application for PIP benefits, claiming that she was entitled to $627 for her lost wages. She arrived at this figure using an average weekly wage that she computed by dividing her gross earnings at UPS by the number of weeks she actually had worked and multiplying that number by seventy-five per cent. Metropolitan rejected DiGiacomo's calculation, instead taking the position that her average weekly wage was to be computed by dividing her gross earnings by fifty-two weeks, without regard to the number of weeks she had been in the labor force. Under Metropolitan's calculation, seventy-five percent of DiGiacomo's average weekly wage was $25.48. Thus, according to Metropolitan, DiGiacomo was owed only $127.40 for the five weeks she was out of work due to her injuries.

*Discussion.* Metropolitan contends that its method of computation is compelled by the plain language of the policy as derived from the essentially identical language of G. L. c. 90, § 34A. So certain is Metropolitan of its interpretation that it devotes a substantial portion of its brief to arguing that the District Court and the Appellate Division violated the doctrine

of separation of powers, as expressed in art. 30 of the Massachusetts Declaration of Rights, in reaching a contrary result. Metropolitan contends that the lower courts "exceeded their judicial authority" and "stretch[ed] the meaning of the [no-fault insurance] statute to create a remedy for the alleged 'injustice' claimed by DiGiacomo," and it characterizes the lower court decisions as "judicial legislating."

This argument reflects a basic misunderstanding of the function of the courts in performing statutory construction. When, as in this case, the meaning of a statute is in dispute, unquestionably it is for the courts to interpret it and apply it to the facts at hand. Statutory interpretation is a quintessential judicial responsibility, to be undertaken using well-established guiding principles.

In a recent case, the Supreme Judicial Court summarized the fundamental precepts of statutory interpretation as follows: " '[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense. See *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996); *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Commn.*, 394 Mass. 233, 240 (1985); *Tilton* v. *Haverhill*, 311 Mass. 572, 577-578 (1942)." *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006).

As these principles recognize, the ultimate goal is to determine and effectuate the intent of the Legislature in the situation presented. In this endeavor, the court begins by looking at the words of the statute — but not in isolation from the statute's purpose or divorced from reason and common sense. Especially when the statute addresses a complex subject, is

written in broad terms, or contains textual oversights, it is important for the court to consider the statute's overall objectives so that the court can best implement the will of the Legislature in the case presented.

As the Supreme Judicial Court has recognized in the specific context of our no-fault insurance law, "[i]n so large a legislative enterprise, there are likely to be casual overstatements and understatements, half-answers, and gaps in the statutory provisions. As practice develops and the difficulties are revealed, the courts are called on to interweave the statute with decisions answering the difficulties and composing, as far as feasible and reasonable, an harmonious structure faithful to the basic designs and purposes of the Legislature." *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 345 (1978).[3]

Here, contrary to Metropolitan's position, the words of the policy and of § 34A do not compel its method of calculating DiGiacomo's PIP benefits. Neither the policy nor the statute explicitly defines the phrase "average weekly gross wage"; nor do they set out a particular method of computation. In its ordinary usage, the word "average" denotes the arithmetic mean — a figure to be obtained by dividing the sum of a set of quantities by the number of quantities in the set. Although the qualifying language in § 34A — "for the year immediately preceding the accident" — provides the time frame for collecting the data to be used in this calculation, nowhere is it stated that all of the weeks in the preceding year must be included in the average, as opposed to only those weeks in which wages were earned.

Nor does the apparent purpose of this provision suggest that the Legislature wished to restrict the PIP benefits of newly employed persons by requiring a fifty-two week average. Rather, the averaging provision appears to have been designed with another concern in mind, namely, the fluctuations in weekly wages of established workers. The Legislature apparently

---

[3]In the *Mailhot* decision, it was held that those entitled to payment under the workers' compensation laws of another state should be excluded from PIP benefits. The court reasoned that this result was in keeping with the sense of § 34A, in relation to the legislation as a whole, even though the statute did not explicitly so provide. *Mailhot* v. *Travelers Ins. Co., supra* at 348.

determined, as it has done in the workers' compensation context, that the amount of earnings received by a claimant during the week of the accident may not be the best measure of the claimant's loss. Thus, in fairness to both claimants and insurers, the Legislature saw fit to require that PIP benefits, like workers' compensation benefits, be based upon an average over time.[4]

The question remains how to compute that average in the case of someone new to the workforce, in a manner that is plausible and consistent with the Legislature's over-all objectives in establishing the no-fault insurance system. No-fault insurance was designed to afford claimants "the security of prompt and certain recovery to a fixed amount of the most salient elements of his out-of-pocket expenses" in return for the surrender of "the possibly minimal damages for pain and suffering recoverable in cases not marked by serious economic loss or objective indicia of grave injury." *Pinnick* v. *Cleary*, 360 Mass. 1, 6 (1971). The Legislature's goals were "to reduce the number of small motor vehicle tort cases being entered in the courts of the Commonwealth, to provide a prompt, inexpensive means of reimbursing claimants for out-of-pocket expenses, and to address the high cost of motor vehicle insurance in the Commonwealth." *Flanagan* v. *Liberty Mut. Ins. Co.*, 383 Mass. 195, 198 (1981), citing *Pinnick* v. *Cleary, supra* at 16-21. The Legislature was "presumably aware of the long delays in getting financial aid to the injured person, confronted with medical and subsistence bills during a period of no employment for him and want for his family," *Pinnick* v. *Cleary, supra* at 20, and sought to ensure that an injured person's most immediate and pressing expenses would be paid quickly and efficiently, without

---

[4]Although not dispositive of the question presented, it is noteworthy that the Legislature has taken length of employment into account in defining "average weekly wages" for purposes of the workers' compensation statute. The earnings of an injured employee during the twelve calendar months immediately preceding the date of injury are to be divided by fifty-two; but if the employee has lost more than two weeks' time during the year before the injury, the employee's earnings are to be divided only by the number of weeks worked. Furthermore, if it is "impracticable" to compute the employee's average weekly wage because of the short duration, nature or terms of employment, it may be computed by looking at the average weekly amount earned during the twelve months prior to the injury by similarly situated employees. G. L. c. 152, § 1(1).

resorting to litigation. See *Flanagan* v. *Liberty Mut. Ins. Co.*, *supra* at 200. Thus, an essential component of the no-fault insurance law was to facilitate, through PIP payments, the claimant's prompt receipt of "the major portion of his lost wages not covered by a wage continuation plan . . . ." *Pinnick* v. *Cleary, supra* at 8.

In this case, regardless of her new arrival to the workforce, DiGiacomo sustained a five-week period of no employment on account of the accident. Were we to read the statute to deny Di-Giacomo meaningful payments because of her limited employment history, we would frustrate the objectives of the no-fault insurance scheme to compensate persons injured in auto accidents for lost wages and to provide a quick and certain substitute for tort damages. We therefore conclude that § 34A, as incorporated into the policy, was intended to operate in Di-Giacomo's situation by calculating her average weekly gross wage for the year preceding the accident based upon the number of weeks that she was employed during that year.

We disagree with Metropolitan's contention that this result conflicts with our previous case of *Gomes* v. *Metropolitan Prop. & Cas. Ins. Co.*, 45 Mass. App. Ct. 27 (1998). *Gomes* did not concern a worker who had been employed for only part of the preceding year; the claimant had been working for two years, but had changed employers and taken a substantial cut in pay two weeks before his accident. In *Gomes*, we rejected the contention that the claimant's PIP benefits were required to be computed based only upon his new salary. Because he had been employed for the entire preceding year, we concluded that the policy and § 34A directed that his PIP benefits be based upon his gross earnings for the year divided by the full number of weeks that he worked during that year. Likewise, we conclude in this case that DiGiacomo's lost wage benefits must be calculated by dividing her gross earnings for the year by the number of weeks that she worked during the year.

*Conclusion.* The decision and order of the Appellate Division is affirmed. Having obtained a judgment for PIP benefits due and payable under the policy, the plaintiff is entitled to her attorney's fees and costs. See G. L. c. 90, § 34M; *Fascione* v. *CNA Ins. Cos.*, 435 Mass. 88, 91-92 (2001). Within fourteen days of the issuance of the rescript of this case, the plaintiff

may apply to the panel that heard and decided this appeal for an award of appellate attorney's fees and costs, in the manner described in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*So ordered.*