Kane, Robert J., J.
Plaintiff Christopher P. Morra (“Morra”) asks, inter alia, that this court issue a preliminary injunction[1] “enjoining and restraining the defendants from taking any action of any kind in connection with holding the currently scheduled October 29, 2007 recall election of the plaintiff, Christopher P. Morra.” For reasons set forth in this memorandum, this court issues the requested relief.
BACKGROUND
As described in the verified complaint,[2] the following actions occurred in an effort to “recall” (remove) Morra as a Rehoboth selectman.
On July 25, 2007, Maiy E. Moriarty*[3] (“Moriarty”) appeared at the town offices of Rehoboth (“Town”) seeking to initiate a recall election of Morra. At the town offices, in the presence of Kathleen J. Conti (“Conti”), the town’s clerk, Moriarty (“the filer”) executed a “Recall Affidavit.” The executed Recall Affidavit consists of one page entitled “Recall Affidavit” followed by eight blank lines in which Moriarty wrote out, in hand, her grounds for seeking Morra’s recall. Directly below Moriarty’s handwritten statement of grounds follows the printed statement, “I hereby swear and affirm that the statements contained herein are true to the best of my knowledge and belief.” Directly underneath appears two lines with the first line for the “[signature of filer” and the second line for the filer’s address, both of which Moriarty completed. Directly underneath the two lines for the filer’s signature and address appear two lines designed for the clerk to witness the filer’s statement and signature. Conti completed the appropriate blocks, signed the Recall Affidavit in her capacity as Town Clerk and embossed the document with the Town Seal.
Upon execution of the Recall Affidavit, Conti gave Moriarty a “Recall Petition” which she completed. For ease of reference, the court now sets forth the document’s front page: 
On July 25, Moriarty filled out the 100 “copies of the [R]ecall (P)etition [BJlanks” that Conti had supplied. Each copy, to which the Town Seal was affixed, was signed by Moriarty and by Conti in her capacity as Town Clerk.
The following day, July 26, 2007, Moriarty returned to the town’s offices and filled out an additional 100 “copies of the [Rjecall (P)etition (B)lanks.” The additional 100 “copies of the [R]ecall (P)etition [B]lanks” were signed by Moriarty and witnessed by Conti, who then affixed the Town Seal.[4]
The Recall Petition consists of one sheet of paper with a front page and a back page. The back page consists of forty additional lines for registered voters’ signatures and residential information and, at the bottom of the back page, the Board of Registrars’ (“Board”) certification of registered voters.
On July 25 and July 26, 2007, Moriarty signed and Conti witnessed the Recall Petition Blanks’ affidavits affirming “that the statements contained are true and that the signatures affixed are genuine.”[5] Moriarty distributed the 200 Recall Petition Blanks to more than twenty-five people, who in turn distributed them to three to four additional people.
Beginning on July 30, 2007 and continuing through August 13, 2007, Moriarty, from time to time, returned Recall Petitions to the Town Clerk upon which Conti noted the date and time of receipt. Upon receipt of such Recall Petitions, Conti undertook to certify the signatures appearing on such petitions in her capacity as a member of the Board. Upon reviewing such Recall Petitions, Conti affixed her signature stamp to the petitions as well as the signature stamps of Registrars Strange and Vitale. Neither Strange nor Vitale had authorized, in writing, Conti’s use of their stamps. On August 13, 2007, Vitale, Conti and Strange certified the Recall Petition. According to the complaint, Conti was the only member of the Board to view and certify the signatures on the petition and no member of the Board other than Conti participated in the process of certifying signatures on the Recall Petition.
On August 13, 2007, counsel for Morra forwarded a letter to Conti and other members of the Board objecting to the procedures employed in the recall. A copy of the letter of objection is attached to the verified complaint. The August 13, 2007 letter of objection contains, inter alia, the following objections: (1) Moriarty signed the Recall Petitions’ affidavits “before the signatures were obtained”: and (2) numerous persons other than Conti gathered the signatures on the Recall Petition.
*300 On August 15, 2007, Attorney Max Volterra (“Volterra”), counsel for the Town, responded to Morra’s letter of objection. The Town’s counsel stated that the reference in Chapter 387 to an affidavit attesting to the genuineness of “each signature appended to the petition” was in reference to “the signatures for the affidavit.”[6]
On August 20, 2007, Morra filed a further letter of objection to the recall procedures followed by the Town. In this second letter of objection, Morra communicated, inter alia, the following objections: (1) that the signatures on the Recall Petitions were suspect in that “many of the signatures are in the same handwriting as other signatures and therefore cannot be genuine”; and (2) that the Recall Petitions were never submitted to the Board for certification and that the Town Clerk “acted unilaterally to certify the signatures
The verified complaint consists of three counts with Count I bearing the heading “Declaratory Judgment and Injunctive Relief for Violation of The Recall.” Under Count I, Morra claims a right to relief because of the following violations:
(a) the absence of a lawful Recall Affidavit, (b) the absence of a lawful affidavit on each page of the Recall Petition, (c) the false attestation by Moriarfy that signatures affixed to the Recall Petition are genuine, (d) improper backdating of 100 blank Recall Petitions by the Town Clerk and Moriarfy, (e) failure by Conti to note on the Recall Petitions the number of blanks issued to Moriarfy as mandated by the Recall Act, (f) delivery by Conti of an excessive number of blank Recall Petitions to Moriarfy, and (g) failure of three members of the Board of Registrars to participate in the certification process as required by state law.
Morra further asserts that the “absence of affidavits removes from the recall process any semblance of security from fraud and the gathering of invalid signatures [and that] the absence of any representation by the person to whom petition blanks were issued on the reverse side of the petition is particularly egregious.” As a remedy for the purported statutory violations, Morra requests injunctive and declaratoiy relief.
In Count II of the verified complaint headed “Declaratory Judgment and Injunctive Relief for Violation of M.G.L.c. 53, §7 and Code of Massachusetts Regulations, 950 CMR 55.02(7),” Morra complains that the Recall Petitions were never submitted to the Board and that the Board neither participated nor certified the Recall Petitions in accordance with G.L.c. 53, §7. Again, Morra requests declaratory and injunctive relief.
Finally in Count III, Morra asserts a violation of the Massachusetts Constitution Part I, Article 9.
HEARING
On September 18, 2007, the court held a hearing on Morra’s request for injunctive relief. Appearing at the hearing was Moriarfy, who through counsel declared her intention to file papers to intervene in the action. Upon counsel’s assurance of Moriarfy’s good faith intent to move to intervene, the court allowed Moriarfy to present oral and written argument on the merits of Morra’s request for injunctive relief.
At the hearing, the court took testimony from Moriarfy and Conti and received a document purportedly retroactively granting Conti authority to act for the Board in certifying the Recall Petition’s signatures.
The credible evidence produced at the September 18, 2007. hearing established that July 25, 2007 was the first occasion that Conti processed a Recall Affidavit and Recall Petition. When Moriarfy informed Conti of her purpose of petitioning for a recall election, Conti examined a document entitled “Town of Rehoboth Recall Affidavit and Petition Procedure.” The one-page instruction, dated January 1993, provided the following relevant instructions: (1) affidavit must be completed and filed by petitioner (“signed in front of and witnessed by Town Clerk or Assistant Town Clerk”); (2) filer of affidavit must sign each petition and signature must be witnessed by either Town Clerk or Assistant Town Clerk (this must be done before any signatures of voters are obtained); (3) within one work day after receiving signed petitions, Town Clerk shall submit them to Board for certification; (4) Registrars must certify in writing the number of qualifying signature petitions and return to Town Clerk by 3 p.m. on the fifth working day after receipt.
Conti is a notary and justice of the peace. As Town Clerk, Conti is authorized to administer oaths to elected officials, committee and board members. Conti administered to Moriarfy an oath to tell the truth to which Moriarfy with her hand raised replied, “I do.” On July 26, 2007, Conti reminded Moriarfy that she was still under the oath administered on July 25, 2007.
After filing the Recall Affidavit, filling out the Recall Petitions, and receiving 200 Recall Petition Blanks, Moriarfy distributed the petitions to 100 circulators. After Moriarfy returned a Recall Petition, Conti, using a computer, brought up the voters’ names and addresses and checked the Recall Petition’s voters’ names and addresses to the registration names and addresses. At the conclusion of an inspection of a Recall Petition, Conti certified a number of signatures and stamped the Registrars’ signatures onto the Recall Petition. Conti had previously received Vitale’s and Strange’s stamps for use in processing nomination papers. On August 24, 2007, the Board met and voted to “ratify and confirm that Kathleen J. Conti, and Town Clerk employees are authorized to perform all the actions required by 950 Code Mass. Reg. 55.02 and G.L.c. 53, §7.”
*301 RULINGS
Motions for injunctive relief require the court to “balance the risk of irreparable harm to the plaintiff and defendant ‘in light of [each] party’s chance of success on the merits’[7] at trial. ‘Only where the balance between these risks cuts in favor of the moving party may a preliminaiy injunction properly issue.’ ” Planned Parenthood League of Mass., Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990), quoting Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). “Where a public entity is a party, a judge may weigh the risk of harm to the public interest when deciding a preliminaiy injunction motion.” Bank of New England, N.A. v. Mortgage Corp. of New England, 30 Mass.App.Ct. 238, 246 (1991); see also Town of Brookline v. Goldstein, 388 Mass. 443, 447 (1983) (the risk of harm to public interest may be considered in appropriate circumstances).
MORRA’S HARM
Certification of the Recall Petition compels Morra either to resign from his office of selectman or participate in a recall election. Unless Morra elects to relinquish his elected position, he must assume the burdens and hardships of a recall election, which will reasonably be expected to entail the expenditure of time, incurrence of expense and the incidence of emotional taxation that a recall election by its terms naturally exacts.
The recall election will compel Morra to organize and manage his campaign within a space of fifty-three (53) days rather than the more extensive time available for campaigning for re-election. Because of the recall election’s special scheduling, the turnout may be less than Morra desires. Ultimately, a recall election subjects Morra to the risk of losing the election and thereby incurring irreparable injury to his personal and political interests. See Attorney General v. Campbell, 191 Mass. 497, 501-02 (1906); Brown v. Town of Hanson, 17 Mass.App.Ct. 932, 932-33 (1983).
RECALL SUPPORTERS’ HARM
Morra suggests that an invalidation of the Recall Petitions will only result in inconvenience to the recall supporters’ interests. He suggests that striking the Recall Petitions simply results in requiring the petitioners to repeat the process. Invalidation of the Recall Petitions occasions more than the sufferance of inconvenience. The setback may weaken the Recall Petition’s supporters’ resolve thereby injuring their ability to secure signatures “of fifteen percent of the registered voters of each precinct” in a twenty-day period.
PUBLIC INTEREST
The public interest in the matter before the court cuts across the parties’ respective interests. On the one hand, the public interest favors the right of registered voters to petition for a recall election and to secure such an election where the Recall Petitions satisfy Chapter 387’s substantive requirements. Conversely, the public interest in the integrity of electoral procedures supports Morra’s right to enforce any safeguards in Chapter 387 on the genuineness of voters’ signatures.
MERITS OF MORRA’S ACTION
Moriarty argues that the court may only consider objections raised by Morra that satisfy the notice requirements of G.L.c. 55B, §7, and 950 Code Mass. Reg. 59.00. However, only G.L.c. 55B, §7, setting forth time limitations to objections to “local ballot questions,” applies. Under G.L.c. 55B, §7, Morra had two working days from the last day “on which the certification of the names on the petition must be completed” to file his objections. Both the August 13, 2007 letter of objection and the August 20, 2007 letter of objection satisfied the deadline imposed by G.L.c. 55B, §7.
In his August 13, 2007 letter of objection, Morra objected to the Recall Petition on the ground that Moriarty had signed the affidavit attesting to the genuineness of “the signatures before the signatures were obtained.” Morra asserts that the timing of Moriarty’s signing of the Recall Petition’s affidavit contravenes Chapter 387’s requirement that the filer (Moriarty) attest to the genuineness of the purported voters’ signatures appended to the Recall Petitions. Responding, the Town argues that the timing of the filer’s (Moriarty’s) signature on the Recall Petition comports with Chapter 387’s requirements as applied by the Town’s administrative agency, specifically, the Town Clerk’s office.
Resolution of when the Recall Petition’s affidavit must be signed invokes application of well established principles of statutory construction. DiGiacomo v. Metropolitan Property & Casualty Ins. Co., 66 Mass.App.Ct. 343, 346 (2006) (“Statutory interpretation is a quintessential judicial responsibility, to be undertaken using well-established guiding principles”). As a first principle, this court looks to the language of Chapter 387 to determine legislative intent. See Hashimi v. Kalil, 388 Mass. 607, 609 (1983); see also United States v. Holmquist, 36 F.3d 154, 159 (1st Cir. 1994), quoting United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987) (“start ... by looking at the language of the law”). The language in Chapter 387 must be “given effect consistent with its plain meaning and the intent of the [legislature.” Perry v. Commonwealth, 438 Mass. 282, 284-85 (2002).
The word “signatures” bears a plain meaning which is not in dispute. The dispute rather focuses on whose signatures’ genuineness were to be attested by the affiant (Moriarty). The court examines the disputed language in the context of its presentation within Section 2 of Chapter 387.
Section 2 of Chapter 387 comprises a description of the Recall Affidavit’s submission, followed by a *302 description of the issuance and the return of the Recall Petition, the Town Clerk’s submission of the Recall Petition to the Board, and the Board’s certification of signatures. Section 2 comprises nine sentences, and of the nine sentences, five sentences apply to the issuance, return and submission of the Recall Petition.
The sentence describing the Recall Petition’s affidavit comprises the sixth sentence in Section 2, and the fourth sentence within the description of the issuance, return and submission of the Recall Petition. The fourth sentence contains the statement requiring the affiant-filer (Moriarty) to affirm “that each signature appended to the petition is the genuine signature of the person whose name it purports to be.”
The term “each” means the presence of signatures. Webster’s Everyday Dictionary 165 (2002). The word “signatures” or words expressive of “signatures,” including the disputed language (“each signature”) appears in four instances within Section 2. Each use of the word “signatures” or expression of “signatures” applies to signatures of signers to the Recall Petition who purport to be registered voters.
“[W]here words are used in one part of the statute in a definite sense, they should be given the same meaning in another part of the statute.” Fascione v. CNA Ins. Co., 435 Mass. 88, 92 (2001), quoting Beeler v. Downey, 387 Mass. 609, 617 (1982); see also Commonwealth v. Hilaire, 437 Mass. 809, 816 (2002); Hallett v. Contributory Ret. Appeal Bd., 431 Mass. 66, 69 (2000); St. George’s Church v. Primitive Methodist Church, 315 Mass. 202, 205 (1943); Wellesley College v. Attorney General, 313 Mass. 722, 728 (1943). In Section 2, the legislature repeatedly addressed the subject of registered voters’ signatures. Section 2 addressed the number of registered voters’ signatures required to be collected, the necessity that residential information of registered voters “be added ... to every signature” and that the signatures on the Recall Affidavit be certified as registered voters. Within those references to signatures of purported registered voters on the Recall Petition appears the requirement that the Recall Petition’s affiant attest that “each signature appended to the petition is the genuine signature of the person whose name it purports to be.” Based on the statutory rule of construction that statutory words “used in one part of a statute in a definite sense” be given the same definitional meaning, this court ascribes to the words “each signature appended to the page” the same definitional meaning that signatures was given throughout Section 2, specifically that “each signature” refers to the signatures of purported voters. Fascione, 435 Mass. at 92.
Additionally, the structure of Section 2 on the sequence of steps involved in the application for the Recall Petition, the issuance of the Recall Petition, and the Recall Petition’s return to the Town Clerk, support the conclusion that the signing of the Recall Petition’s affidavits succeeds the issuance of the Recall Petition. See Attorney General v. School Comm. of Essex, 387 Mass. 326, 337 (1982) (“In construing a statute, words or phrases used in one part of a statute should be related and considered in light of their context”); Homewood v. Homewood, 11 Mass.App.Ct. 864, 866 (1981) (“a phrase ... of a statute may not be considered in isolation from the rest of the statute”). The requirement that the Recall Petition’s affiant attest to the genuineness of each appended signature appears within the portion of Section 2 describing the return of the Recall Petition rather than within the portion of Section 2 describing the issuance of the Recall Petition. Indeed, Section 2 describes the affidavit’s signer as the individual “to whom the petition forms were issued.” Additionally, Section 2 describes the Recall Petition’s affidavit’s signing as directly preceding the Town Clerk’s submission of the “signed petitions” to the Board for certification purposes. Section 2’s logical order of events in the application for the Recall Petition, their issuance, return and submission to the Board provides a context for concluding that the legislature intended to require the Recall Petition’s filer to attest to the genuineness of the purported voters’ signatures.
Furthermore, interpreting Chapter 387 to require the filer to sign an affidavit attesting to the genuineness of purported voters’ signatures does not result in an “absurd or unreasonable” consequence. North Shore Realty Trust v. Commonwealth, 434 Mass. 109, 112 (2001), quoting Champigny v. Commonwealth, 422 Mass. 249, 251 (1996). Rather, the interpretation that this court adopts from the words of Section 2 of Chapter 387 coincides with the established understanding that “(s]tatutoiy provisions as to elections . . . are enacted [in part] to prevent fraud and mistakes.” Clancy v. Wallace, 288 Mass. 557, 566 (1934). Except for the Recall Petition’s affidavit’s attestation to the genuineness of signatures, there exists no express requirement for any specific action in the Recall Petition procedure that aids in ensuring that the purported voters’ signatures appended to the Recall Petitions are genuine. By inserting the requirement that the filer attest to the genuineness of “each appended signature,” the legislature provided a conventional check against the incidence of fraud.
Finally, defendants maintain that the court ought to provide deference to the Town’s applied interpretation that the term “each signature appended” applies to the signatures on the initial recall affidavit, namely the signatures of the filer and Town Clerk. The court concurs with the proposition that an agency’s interpretation of a statute is entitled to appropriate deference when the agency’s interpretation “is rational, and adhered to consistently.” Boston Police Superior Officers Federation v. City of Boston, 414 Mass. 458, 462 (1993).
*303 The Town’s interpretation fails to comport with either common sense or the plain language of Section 2 of Chapter 387. Common sense contradicts the proposition that the legislature intended to require that the filer sign an affidavit on each page[8] of the copies of the Recall Petition Blanks[9] attesting only to the genuineness of the filer’s and Town Clerk’s signature, and not attesting to the genuineness of each purported voters’ signature. It defies common sense to conclude that the legislature would require that on “each page” the filer attest to the genuineness of the filer’s and Town Clerk’s signatures while omitting from the attestation requirement the genuineness of purported voters’ signatures “appended to the petition.” St. 1986, c. 387, §2. Conversely, interpreting the Recall Petition attestation requirement to include the signatures of purported voters honors the plain meaning of the statute’s words and the logical relationship to the prevention of fraud of an affiant’s attestation to the genuineness of purported voters’ signatures.
Furthermore, inspection of the words used by the legislature in Section 2 contradicts the Town’s position that Section 2 requires the filer to attest only to the genuineness of the filer’s and Town Clerk’s signatures. By excluding from the Recall Petition’s attestation requirement the signatures of purported voters, the interpretation urged by the Town negates the clear meaning of Section 2 requiring that the filer attest to the genuineness of “each signature appended to the petition.” Nullification of Section 2’s plain meaning exceeds the powers granted to courts and the authority conferred upon administrative agencies. In conclusion, this court finds that Morra has demonstrated a likelihood of success.
In sum, based upon a consideration of the public interest and a weighing of irreparable harm to the plaintiff and defendants in light of each party’s chance of success on the merits, this court determines that a preliminary injunction shall issue.
ORDER
Based upon the foregoing, this court hereby ENJOINS and RESTRAINS the defendants, their employees or agents from taking any action of any kind in connection with holding the currently scheduled October 29, 2007 recall election of the plaintiff, Christopher P. Morra. As to the posting of the bond, the court in view of the nature of the action, waives the posting of the bond. Also, this court hereby orders a speedy trial of Plaintiffs complaint for equitable relief.

This court has considered and rejected Moriarty’s claim that the court lacks jurisdiction to order injunctive relief.

The court merely recites the complaint as a means to explain the nature of the complaint and the general order of events leading up to the complaint’s filing.

In this action, Moriarty, in her representative capacity, is a defendant.

The “copies of [Rjecall [Pjetition [Bjlanks” signed and witnessed on July 26, 2007 were backdated to July 25, 2007. When Conti authorized the backdating of the Recall Petition Blanks, she had communicated with a state official who indicated that such backdating was appropriate.

The Recall Statute, St. 1986, c. 387, §2, requires an affidavit attesting to the genuineness of “each signature appended to the petition.” At the hearing, Conti was asked whether she believed that Moriarty, by signing the affidavit, was attesting to the validity of Conti’s signature. Conti replied, “I would say not.”

Town Counsel’s reference to “the signatures for the affidavit” appears to refer to signatures required by Chapter 387 for signing an affidavit. Chapter 387 does not require more than the signature of one voter as the affiant on the Recall Affidavit, and only requires “the person to whom the petition forms were issued” sign the Recall Petition’s Affidavit. However, a definition of affidavit impliedly requires the signatures of the affiant and the “person having authority to administer such oath or affirmation.” Black’s Law Dictionary 58 (6th ed. 1990).

If a party can demonstrate the presence of irreparable harm to its interest and convince the court that no such irreparable harm will affect the other side, a court may issue the requested relief upon a showing of “a substantial possibility of success on the merits.” Packaging Indus. Group, 380 Mass. at 617 n.12.

A “page” is defined as “1. one side of a leaf of something printed or written ... 2. the entire leaf.” Webster’s Everyday Dictionary 384 (2002).

Interestingly, the Recall Petition forms used by the Town in 1998 and in the case before the court lack an affirmation on the Recall Petition’s back page.