Lu, John T., J.
INTRODUCTION
The plaintiffs, Scott G. Hambley and Constance J. Hambley (Hambleys), brought this case against the defendants, Stuart L. Dalzell and Katherine L. Dalzell (Dalzells),[3] Polaris Sheet Metal, Inc. (Polaris), and the Zoning Board of Appeals of the Town of Rowley and its members (Board), seeking to prevent the Dalzells’ use of property located at 54 Warehouse Lane, Rowley (the Property), as a machine shop and contractor’s yard. The Hambleys brought a claim for relief under G.L.c. 40A, §17 (Count I), a claim to enforce the Town of Rowley’s (Rowley) zoning bylaws (Count II), a claim to abate a nuisance relating to the Dalzells’ use of the Property as a machine shop and contractor’s yard (Count III), and a claim to abate nuisance, enjoin harassment, and for damages relating to a fence the Dalzells installed (Count IV).
The Hambleys now move for injunctive relief and request the Court enjoin the property’s use as a machine shop, contractor’s yard, or for any other use not allowed under Rowley’s zoning bylaws. They also seek injunctive relief and request the Court order the Dalzells to remove a fence the Dalzells recently installed.
The Hambleys appealed Rowley’s Building Inspector’s refusal to enforce the Town’s “non-conforming use” bylaw against the Property. The Board dismissed the appeal without making findings because it determined that the Hambleys’ appeal fell outside of G.L.c. 40A, §7’s statute of limitations. The Hambleys brought this case seeking, among other relief, review of the Board’s decision. The Court finds that the Hambleys are likely to succeed on the merits because G.L.c. 40A, §7’s statute of limitations does not apply to bylaw enforcement against non-conforming uses. The machine shop and contractor’s yard are unprotected nonconforming uses because the prior use as a publishing company has been abandoned and because these uses are different in nature, qualiiy of character, and degree of use than the publishing company use.
Although they have shown a likelihood of success on the merits, and it is a close question, the Hambleys have not met the preliminary injunctive relief standard for enjoining the use of the property as a machine shop and contractor’s yard. The Hambleys, however, have met the injunctive relief standard for removal of the fence.
BACKGROUND
The Hambleys and Dalzells own 52 and 54 Warehouse Lane, respectively, in Rowley, Massachusetts. The Hambleys have lived there since 1989. The Dalzells bought the Property in 2006, and have used it for residential and commercial purposes. It is the commercial use that the Hambleys seek to enjoin.
Before 1977, Rowley’s zoning bylaws did not prohibit commercial use of the Property, but classified it as an undersized lot. Even though it was undersized, a machine shop operated there until March of 1977, when a new owner purchased it for use as a book publishing company’s headquarters. The new owner requested that the Board grant a variance allowing use *44 of the Property for the book publishing headquarters even though it was undersized. The Board granted the variance, but restricted the Property’s use to “commercial.”
The publishing company used the Property mainly for office work and the storage and shipment of books. It did not use heavy machinery or compressors, and it stored all of its material inside the building on the Property. The company used computerized typesetting equipment to create printable books, but printed the books offsite. This use continued until November of 1986.[4]
In July of 1988, Paul Costain (Costain) and William Sweeney (Sweeney) purchased the Property, and Row-ley issued them a certificate of occupancy that allowed them to operate a machine shop. The machine shop operated twenty-four hours a day, was noisy, created chemical odors that permeated the neighborhood, and caused vibrations that shook the neighbors’ property. In addition, materials were stored outside the building in the yard. The Hambleys complained about the machine shop, and in 1993 Rowley’s Board of Health investigated, but took no action. The machine shop operated until May of 2006, when the Dalzells bought the Property.
In March of 2007, the Board granted the Dalzells a Special Permit that allowed part of the Property to be used for “residential” purposes.[5] The Dalzells leased the remainder of the Property to Polaris from December 1, 2007, through November 30, 2008. Rowley issued Polaris a certificate of use and occupancy allowing a machine shop. Polaris operates a machine and welding shop on the Property, and is using the Property similarly to how Costain and Sweeney used it.
The Hambleys also contend that the Dalzells are using the Property’s yard for a contracting business. The Hambleys allege that the Dalzells are storing materials and supplies (logs, culverts, bricks, lumber, stone, soil, and mulch), and parking construction vehicles (a dump truck, trailers, an excavator, and several tractors).
In 1983, Rowley changed the zoning districts, creating, among other districts, an “Outlying District.” The Town essentially barred commercial activities from this district, which is where the Property is located. Rowley further limited commercial uses in the Outlying District in 1985.
Rowley’s zoning bylaws prohibit a property’s nonconforming use from being reestablished if the use was abandoned or discontinued for two or more years.[6] The Hambleys contend that the Property’s previous use as a publishing company was a “non-conforming” use, that the use was abandoned for two or more years, and that the Property cannot be used for a different non-conforming use. The Hambleys also contend that Rowley’s bylaws prohibit the machine shop on the Property because the machine shop puts the Property to a more intensive use than the publishing company’s use.[7]
The Hambleys requested that Rowley’s Building Inspector enforce the bylaws. The Building Inspector refused, stating that the issue was currently in litigation, presumably referring to the Hambleys’ prior appeal. See supra n.5. The Hambleys appealed the Building Inspector’s decision to the Board.
The Board denied the Hambleys’ appeal due to lack of standing, stating that the Hambleys failed to comply with the time limitations in G.L.c. 40A, §7. The Ham-bleys seek judicial review of the denial.
The Dalzells installed a fence on the Property after the Hambleys began trying to enforce Rowley’s bylaws. The fence does not surround the Property, it is only installed on the part of the property line that faces the Hambleys’ house. The fence is made of rusted metal roofing material, and has the semi-legible words “No Trespassing/Police Take Notice” spray painted on the side that faces the Hambleys. It randomly varies in height along its length and is about twenty-three feet long.[8] The Hambleys complained to town officials, who sent Fence Viewers to inspect the fence. The Fence Viewers recommended to the Town’s Board of Selectmen that the fence either be removed or cut to an even height, and that the sign be removed or painted over with a solid color. The Board of Selectmen — of which Stuart L. Dalzell is a member — took no action. The Hambleys allege that the fence was installed for spite, has no utility, and is a nuisance.
DISCUSSION
I. Injunctive Relief Standard
“To succeed in an action for a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiffs likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction.” Tri-Nel Mgmt, Inc. v. Bd. of Health, 433 Mass. 217, 219 (2001).
The Hambleys incorrectly contend that they need not show irreparable harm. Irreparable harm is.not required when an action is brought by the government to enforce a statute or other legislation. See Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984), quoting United States v. D’Annolfo, 474 F.Sup. 220, 222 (D.Mass. 1979) (“ ‘When the government acts to enforce a statute or make effective a declared policy of [the Legislature], the standard of public interest and not the requirements of private litigation measure the propriety and need for injunctive relief (citation omitted)”). In certain cases the Legislature has given citizens statutorily defined power to act as a private attorney general and enforce a statute or declared policy of the Legislature. See LeClair v. Town of Norwood, 430 Mass. 328, 331 (1999) (G.L.c. 40, §53, “provides a mechanism” for citizens to bring suit as a *45 private attorney general); see also Edwards v. Boston, 408 Mass. 643, 646 (1990) (same). The Hambleys seek injunctive relief pursuant to G.L.c. 40A, §17, however, which does not allow citizens to act as a private attorney general, and requires a finding of irreparable harm.
II. Preliminary Injunctive Relief Forbidding the Use of the Property for Any Use Not Allowed Under Rowley’s Zoning Bylaws
General Laws c. 40A, § 17, requires the court to hear evidence “pertinent to the authority of the board,” and annul to the Board’s decision if the Board exceeded its authority. Review is de novo, but the court may only overturn the Board’s decision if it is based on a “legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.” Davis v. Zoning Bd. of Chatham, 52 Mass.App.Ct. 349, 355 (2001), rev. denied, 435 Mass. 1105 (2001), quoting Roberts v. Southwestern Bell Mobile Sys., Inc., 429 Mass. 478, 486 (1999). “So long as ‘any reason on which the board can fairly be said to have relied has a basis in the trial judge’s findings and is within the standards of the zoning by-law and The Zoning Enabling Act, the board’s action must be sustained regardless of other reasons which the board may have advanced.’ ” Id. at 356, quoting S. Volpe & Co. v. Bd. of App. of Wareham, 4 Mass.App.Ct. 357, 360 (1976).
A. Likelihood of success on the merits.
1. General Laws chapter 40A, Section 7.
The Board did not make any findings, nor did it consider the merits of the Hambleys’ appeal, because the Board dismissed the appeal solely on the ground that the appeal was brought outside of G.L.c. 40A, §7’s statute of limitations. The Hambleys allege that the Board erroneously applied the statute to their appeal. Whether the Board properly dismissed the Hambleys’ appeal is a matter of statutoiy construction, a power reserved for the courts. See DiGiacomo v. Metrop. Prop. & Casualty Ins. Co., 66 Mass.App.Ct. 343, 346 (2006) (“When ... the meaning of a statute is in dispute, unquestionably it is for the courts to interpret it and apply it to the facts at hand. Statutory interpretation is a quintessential judicial responsibility, to be undertaken using well-established guiding principles.”).
Statutory interpretation begins with the statute’s plain language. See id. General Laws c. 40A, §7, requires a plaintiff to record notice of a suit at the Registry of Deeds (“registry”) in two instances. First, if the plaintiff is challenging the legality of an original building permit, a plaintiff must record notice of the suit within six years of the alleged violation.[9] G.L.c. 40A, §7 (2008). The original building permit is not part of the record, and was not submitted to the Board when the Hambleys appealed the Building Inspector’s decision. There is no evidence that the Property’s use as a machine shop was authorized under the original building permit, and there is no credible suggestion that the Hambleys are challenging it.
Second, if a plaintiff alleges that a structure violates zoning laws, the plaintiff must record notice at the registry within ten years of the alleged structural violation.[10] G.L.c. 40A, §7. The Hambleys are not alleging that a structure on the Property violates the zoning bylaws, so the ten-year statute of limitations is not relevant.
This interpretation “renders the legislation effective, [and is] consonant with sound reasoning and common sense.” DiGiacomo, 66 Mass.App.Ct. at 346. Recording a notice at the registry is akin to putting a lien on the Property, which would adversely affect the Dalzells. Either a successful challenge to the issuance of the building permit or a successful challenge to the legality of structures on the Property would prevent the Dalzells from using it for any purpose until the violation was corrected. The Hambleys’ claimed basis for this action is to stop the non-conforming use, not to prevent all use of the Property.[11] See Lord v. Zoning Bd. of App. of Somerset, 30 Mass.App.Ct. 226, 227-28 (1991) (the Legislature did not intend the six-and ten-year statute of limitations in G.L.c. 40A, §7 to protect use violations).
The statute of limitations in G.L.c. 40A, §7 does not apply to the Hambleys’ claim. The Board erroneously applied Section 7 to dismiss the Hambleys’ appeal instead of reaching the merits, and its decision will be vacated because “it is based on a legally untenable ground.” Davis, 52 Mass.App.Ct. at 355.
2. Determining whether the 1977 variance was a “use” variance or a “dimensional” variance.
“Use” variances usually state with specificity the use which the variance grants. See, e.g., Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 203 (2005) (variance allowed property owner to operate “a restaurant, lounge, bar, function facility, theater, hall or other place of amusement, entertainment or assembly”); Mendes v. Bd. of App. of Barnstable, 28 Mass.App.Ct. 527, 527 (1990) (variances allowed owners to erect “a building for construction shop work, an addition to that building, and a storage yard for construction materials and equipment”). They are difficult to obtain and may only be granted by a town’s zoning board of appeals when that town’s local ordinances or bylaws expressly permit variances for use. G.L.c. 40A, §10 (“Except where local ordinances or by-laws shall expressly permit variances for use, no variance may authorize a use or activiiy not otherwise permitted in the district in which the land or structure is located . . .”). Rowley’s bylaws do not “expressly permit variances for use.”
“Dimensional” variances may be given when the “circumstances relating to the soil condition, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, finan *46 cial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.” Id. Additionally, “[t]he permit granting authority may impose conditions, safeguards and limitations ... of use . . .” Id. These restrictions should not be misread to change a “dimensional” variance into a “use” variance. See Mendes, 28 Mass.App.Ct. at 531 (variances are not “launching pad[s]” for nonconforming uses, but “operate as a safely valve to relieve an owner of real estate from the hardship of compliance with a zoning regulation resulting from particular physical characteristics that burden the real estate”).
The 1977 variance’s plain language reveals that it is a “dimensional” variance with a “use” restriction. The Property’s former owner requested the variance because the Property was an undersized lot. Although the 1977 permit purports to make the Property “commercial,” this is a restriction that the Board added to avoid “nullifying or substantially derogating from the intent or purpose of such . . . by-law,” which was to prevent Rowley from having “many small lots and uncontrolled increase in school population.”
3. The prior non-conforming use.
The publishing company complied with Rowley’s bylaws except that it operated on an undersized lot. In 1983 and 1985 Rowley enacted bylaws essentially barring commercial activity in the Outlying District, but the publishing company continued to operate as a prior non-conforming use. “A prior nonconforming use is a use that had been allowed as a matter of right under prior zoning by-laws, but is not allowed under the new by-law.” Barron Chevrolet, Inc. v. Danvers, 419 Mass. 404, 408 (1995); see also G.L.c. 40A, §6; Town of Rowley Protective Bylaw §2.0.
General Laws c. 40A, §6, requires the application of town zoning bylaws “to any change or substantial extension” of nonconforming uses that were lawfully in existence at the time the town enacted the bylaw making the use illegal.[12] There are three tests “to determine whether a current use of properly is a protected nonconforming use: ‘(1) Whether the use reflects the ’’nature and purpose" of the use prevailing when the zoning by-law took effect ... (2) Whether there is a difference in the quality or character, as well as the degree, of use ... (3) Whether the current use is “different in kind” in its effect on the neighborhood.’ “ Cape Resort Hotels, Corp. v. Alcoholic Licensing Bd., 385 Mass. 205, 212 (1982), quoting Bridgewater v. Chuckran, 351 Mass. 20, 23 (1966). ’’The property owner bears the burden of proving the requisite similarity between the current use and the original nonconforming use." Id.
Unlike Costain and Sweeney’s machine shop, the publishing company was not a twenty-four-hour-a-day business, did not require the use of heavy equipment and compressors, did not create loud noise, chemical smells, or strong vibrations that disturbed neighbors, and did not have materials or equipment stored outside. It used the Property mostly for office work and the storage and shipment of books. Costain and Sweeney’s machine shop is not a protected nonconforming use because it does not satisfy any prong of the Bridgewater v. Chuckran test, and is subject to Rowley’s zoning bylaws.
The Dalzells purchased the Property from Sweeney and Costain in May of 2006, then, eighteen months later, leased the Property to Polaris for one year. Rowley issued Polaris a certificate of occupancy that allowed it to operate a machine shop. The Dalzells are also using the Property as a contractor’s yard. The current uses of the Property are not protected nonconforming uses because they are different in nature, quality of character, and degree of use, and have a different effect on the neighborhood than the publishing company’s uses.
4. Town of Rowley Protective Zoning Bylaw
A non-conforming use is abandoned and cannot be reestablished if it is “discontinued or not used for a period of two (2) years or more.” Town of Rowley, Protective Zoning Bylaw §5.1.1. The publishing company became a protected non-conforming use when Rowley barred commercial uses in the Outlying District in 1983.. This nonconforming use ended in November of 1986 when the publishing company ceased doing business. As of December 1988, the Property’s protected nonconforming use was discontinued for more than two years, and therefore, was abandoned.
In addition to abandonment, the Hambleys argue that the Dalzells are prohibited from operating a machine shop and contractor’s yard on the Properly because these uses are less restrictive in terms of “intensity of use” than the publishing company’s use and “more detrimental to the neighborhood.” Town of Rowley, Protective Zoning Bylaw, §5.2. The publishing company conducted routine office functions, editing, graphic design, book storage, and typesetting on a quiet, desk-top, computer device. The machine shop and contractor’s yard uses creates loud noises throughout the day, involve heavy equipment moving in and out of the property, noxious chemical odors emanating from the property, outside storage of industrial materials, and commercial traffic, during business hours.
The machine shop and contractor’s yard put the property to less restrictive uses than did the publishing company. In their argument, however, the Ham-bleys fail to note that the more restrictive/less restrictive limitation outlined in the bylaws[13] only applies to situations where the Board has issued a special permit authorizing an expansion or change in a non-conforming use. Town of Rowley, Protective Zoning Bylaw, §5.2. There is no evidence that the Board issued a special permit authorizing Costain and *47 Sweeney to operate a machine shop on the Property and the restrictions on expansions and changes are inapplicable.
The Board, however, will likely find that the prior, protected non-conforming use was as a publishing company, not a general “commercial” use, and this use was abandoned because it was discontinued for two or more years. The Hambleys have shown that they are likely to succeed on the merits.
B. Irreparable harm.
To establish “irreparable harm,” the Hambleys must show that they will suffer a loss of rights “that cannot be vindicated by a full hearing on the merits.” Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). The Court balances the likelihood the Hambleys will suffer irreparable harm if the injunctive relief is not granted against the risk of irreparable harm to the defendants if injunctive relief is granted. Id. at 617. “What matters as to each pariy is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits.” Id. “Only where the balance between these risks cuts in favor of the moving pariy may a preliminary injunction properly issue.” Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990), quoting Packaging Indus. Group, Inc., 380 Mass. at 617.
The Hambleys claim they suffer irreparable harm based on the machine shop’s interference with the “day-to-day use and comfort” of their property. The Dalzells claim that they will lose rental income and business if the machine shop and contractor’s yard are forced to cease operations. The balance of these harms is a close case. The harm the Hambleys suffer — increased traffic during business hours, loud noises, small vibrations, and occasional unpleasant odors, and the imposition caused by the contractor’s yard — are difficult to quantify, but do not rise to the level necessary to show irreparable harm. See contra Proulx v. Basbanes, 354 Mass. 559, 560-62 (1968) (laundry business enjoined where the noise and vibrations caused mortar to fall from the plaintiffs’ cellar, cracks to appear in the foundation, windows to loosen from their frames, and also caused the plaintiffs to occasionally feel sick and nervous); Cumberland Corp. v. Metropoulas, 241 Mass. 491, 501-03 (1922) (rubber manufacturer enjoined because naphtha odors prevented the plaintiff from opening windows on his property and the violent vibrations caused his whole property to tremble); Joyal v. Marlborough, No. CA9457562 (Marlborough Super. Ct., Feb. 20, 1995) (Cowin, J.) [3 Mass. L. Rptr. 379] (sewage sludge compositing facility enjoined where offensive and pervasive odors caused plaintiffs to awaken from sleep with gagging reactions, prevented them from going outside on their own properly, and forced them to keep all their windows shut).
On balance, this court is persuaded that exercise of the court’s equitable powers to enjoin operation of the machine shop is not appropriate. Though the Hambleys have shown a likelihood of success on the merits, the irreparable harm to the Dalzells, if the machine shop and contractor’s yard are enjoined and the loss of business this would entail, outweighs the risk of irreparable harm caused by the moderate interference with the Hambleys’ use of their property. Since the Hambleys have not shown irreparable harm, their requested preliminary injunctive relief regarding the machine shop and the contractor’s yard will be denied.
III. Preliminary Injunctive Relief Requiring Removal of the Fence
In order to succeed on a nuisance claim, a plaintiff must show “that the defendant caused ‘a substantial and unreasonable interference with the use and enjoyment of the property’ of the plaintiff.” Rattigan v. Wile, 445 Mass. 850, 856 (2006), quoting Doe v. New Bedford Hous. Auth., 417 Mass. 273, 288 (1994). “The general rule is that a trier of fact may find an intentional invasion of another’s interest in the use of and enjoyment of land to be unreasonable if the ‘gravity of the harm’ caused thereby ‘outweighs the utility’ of the actor’s conduct.” Id. at 857, quoting Restatement (Second) of Torts §826(a) (1979). When a defendant’s actions are solely to annoy and harm a neighbor, those actions are unreasonable as a matter of law. See id. “[A] landowner’s conduct [is also] unreasonable if the harm to a neighbor is substantial and ‘it would be practicable for the actor to avoid the harm in whole or in part without undue hardship.’ ” Id., quoting Restatement (Second) of Torts §830.
A landowner’s right to use his or her land is interpreted broadly. See id. at 859. A showing by the landowner plaintiff that the defendant damaged his land, or prevented the landowner from using his land, are not required elements of a nuisance claim. See id. Offensive sights, sounds, and smells are actionable in nuisance. See Rattigan, 445 Mass. at 859. Aesthetic conditions also can be the basis for a nuisance action. Id. at 861. Nuisance, however, does not extend to “all petty annoyances of everyday life in a civilized community.” Id. at 856, quoting W.L. Prosser & W.P. Keaton, Torts §88, at 626 (5th ed. 1984); see also Wade v. Miller, 188 Mass. 6, 7 (1905) (operation of a hen house, which caused noise and odor, was not an actionable nuisance).
A. Nuisance relating to the fence.
The Dalzells’ solitary motivation for construction of the fence was to harass the Hambleys. The Dalzells installed the fence soon after the Hambleys began trying to obtain enforcement of Rowley’s zoning bylaws. The fence is made of rusted metal, is uneven in height, and the fence does not surround the Dalzells’ property, but only faces the Hambleys’ house. It does not run the full length of the property line. It is ugly, and Rowley’s Fence Viewers recommended that it be removed. Despite there being no record of trespassing, the Dalzells semi-legibly spray painted “No Trespass *48 ing/Police Take Notice” across the fence (in the process writing over a prior misspelling). The Hambleys have shown that they will likely succeed on the merits of their nuisance claim.
Denying the injunction will cause irreparable harm because the fence is damaging the Hambleys’ interest in their property on a daily basis. It is crudely made, and is nothing more than an eyesore intended to offend the Hambleys. It is a “substantial, continuing ‘invasion of another’s interest in the private use and enjoyment of land.’ ” Rattigan, 445 Mass. at 858, quoting Restatement (Second) ofTorts §§821D, 821F, 822. The Hambleys’ loss cannot be redressed after a hearing on the merits because it is “a substantial injury that is not accurately measurable or adequately compensable by money damages;” Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996); see also Boston Athletic Assoc., 392 Mass. at 362 (difficulty in establishing damages is a basis for finding irreparable harm).
The harm that the Hambleys are suffering greatly outweighs any harm that the Dalzells will suffer if the fence is removed. The Hambleys have submitted evidence of the harm that they suffer on a daily basis due to the fence, while the Dalzells are silent about harm they will suffer if the fence is removed. There is no evidence that the fence was installed for any purpose other than to spite the Hambleys. The Hambleys’ motion for preliminary injunctive relief as to the fence is allowed, and the fence must be removed.
ORDER
The plaintiffs Scott G. Hambley and Constance J. Hambley’s motion for preliminary injunctive relief enjoining the defendants Stuart L. Dalzell, Katherine L. Dalzell, and Polaris Sheet Metal, Inc., from using the property located at 54 Warehouse Lane in Rowley, Massachusetts, as amachine shop, contractor’s yard, or for any other use not allowed under Rowley’s zoning bylaws is DENIED.
The plaintiffs Scott G. Hambley and Constance J. Hambley’s motion for preliminary injunctive relief requiring the defendants Stuart L. Dalzell, Katherine L. Dalzell, and Polaris Sheet Metal, Inc., to abate a nuisance by removing the fence on the property line at 54 Warehouse Lane in Rowley, Massachusetts, is ALLOWED. The fence shall be removed within seven days of this order.
The Hambleys’ appeal of the Rowley Building Inspector’s refusal to enforce the Town’s “non-conforming use” bylaw is REMANDED to the Zoning Board of Appeals of the Town of Rowley for a full hearing on the merits.

 Stuart L. Dalzell is also a member of the Rowley Board of Selectmen.

 Rupert H. Ingram’s affidavit stated that the publishing company ceased operations on April 30, 1986. Gillian P. Ingram’s affidavit to the Building Inspector, in May of 1988, stated that the publishing company ceased operation in November of 1986.

 The Hambleys opposed the Special Permit, and have appealed the Board’s decision, which is Essex Superior Court Civil Action Number 07-1335C.

 “Non-conforming uses and structures may be continued as provided in M.G.L., Ch. 40A, §6. However, if a non-conforming use is abandoned, it shall not be reestablished, and any future use shall be in conformance with this Bylaw. A non-conforming use shall be deemed to have been abandoned, regardless of whether the owner/operator intended to abandon such use, if the use is discontinued or not used for a period of two (2) years or more.” Town of Rowley, Protective Zoning Bylaw §5.1.1 (2006).

 “The authority under section 5.2.1 to approve an expansion or a change of a non-conforming use is subject to the following limitations:... (d) if a non-conforming use has been changed to a more restrictive non-conforming use (in terms of such factors as intensity of use, parking or loading capacity, or hours of operation), it may not thereafter be changed to a less restrictive non-conforming use . . .” Town of Rowley, Protective Zoning Bylaw §5.2.2(d).

 A copy of a photograph of the fence is attached.

 “[I]f real property has been improved and used in accordance with the terms of the original building permit issued by a person duly authorized to issue such permits, no action, criminal or civil, the effect or purpose of which is to compel the abandonment, limitation or modification of the use allowed by said permit or the removal, alteration or relocation of any structure erected in reliance upon said permit by reason of any alleged violation of the provisions of this chapter, or of any ordinance or by-law adopted thereunder, shall be maintained, unless such action, suit or proceeding is commenced and notice thereof recorded in the registry of deeds for each county or district in which the land lies within six years next after the commencement of the alleged violation of law . . .” G. L. c. 40A, §7.

 “[N]o action, criminal or civil, the effect or purpose of which is to compel the removal, alteration, or relocation of any structure by reason of any alleged violation of the provisions of this chapter, or any ordinance or by-law adopted thereunder, or the conditions of any variance or special permit, shall be maintained, unless such action, suit or proceeding is commenced and notice thereof recorded in the registry of deeds for each county or district in which the land lies within ten years next after the commencement of the alleged violation.” Id.

 Commentators on Massachusetts real estate law agree with this interpretation of G.L.c. 40A, §7. See M. Bobrowski, Massachusetts Land Use Planning, §7.04(D)(3), p. 223 (2002) (there is no statute of limitations restriction for an action to enjoin a non-conforming use that violates zoning provisions); see also 17C Mass. Prac. §65.12.

 “Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or by-law required by section five, but shall apply to any change or substantial extension of such use . . G.L.c. 40A, §6 (emphasis added).

 Once a non-conforming use is changed to a more restrictive non-conforming use, i.e. a lower intensity use, “it may not thereafter be changed to a less restrictive non-conforming use.” Town of Rowley, Protective Zoning Bylaw, §5.2.2(d).