447 S.E.2d 612

**WRITE–IN PRITT CAMPAIGN, in its Capacity as a Duly Authorized Political Action Committee; Frank Young, individually and in his Capacity as Co-Chairman and Treasurer of the Write–In Pritt Campaign and Carroll Jett, individually and in His Capacity as Co-Chairman of the Write–In Pritt Campaign, Petitioners,**

v.

**Ken HECHLER, in His Capacity as Secretary of State of the State of West Virginia, Respondent.**

No. 22394.

Supreme Court of Appeals of West Virginia.

Submitted July 20, 1994.

Decided July 21, 1994.

Rehearing Denied Aug. 26, 1994.

Michael C. Farber, Sutton, for petitioners.

1. Although this political action committee was originally designated as the "Write-in Pritt Campaign" pursuant to the original documents filed with the Secretary of State, they changed their name to the Mountaineer Party on May 9, 1994, just shortly after the circuit court's certification order.

2. West Virginia Code § 3–1–8 provides, in pertinent part, that

William S. Steele, Asst. Atty. Gen., Charleston, for respondent.

WORKMAN, Justice:

This proceeding arises pursuant to two certified questions from the Circuit Court of Kanawha County pertaining to whether the Respondent Ken Hechler, in his capacity as the West Virginia Secretary of State, is required by law to recognize the Mountaineer Party [1] as an independent political party and grant the same ballot access. Having fully examined this issue, we conclude that the Mountaineer Party is not entitled to ballot access.

On December 23, 1993, Petitioners Frank Young and Carroll Jett, the co-chairmen of the Write-in Pritt Campaign instituted a declaratory judgment action in the circuit court for determining whether the Write-in Pritt Campaign, in its capacity as a duly authorized political action committee (hereinafter referred to as the "PAC"), constituted a political party as contemplated by the provisions of West Virginia Code § 3–1–8 (1994).[2] After evidentiary hearings were held below on February 9 and 10, 1994, the circuit court certified the following questions to this Court:

1. Whether a duly organized political action committee may constitute an 'affiliation of voters' representing any principle or organization for the purpose of forming a political party pursuant to West Virginia Code section 3–1–8?

2. Whether an 'affiliation of voters' representing any principle or organization which, at the last preceding general election, polled for its candidate at least 1% of the total number of votes cast for all candidates for that statewide office shall be afforded independent political party status

Any affiliation of voters representing any principle or organization which, at the last preceding general election, polled for its candidate for governor at least one percent of the total number of votes cast for all candidates for that office in the state, shall be a political party, within the meaning and for the purpose of this chapter.

. . . . .

pursuant to West Virginia Code section 3–1–8 if it was a:

a. Duly organized political action committee, representing a principle or organization;

b. whose write-in candidate for governor polled 7.4% of the total number of all votes cast for governor during the last preceding general election;

c. identified on its Statement of Organization filed with the Secretary of State that its purpose was to support or oppose other 'candidates' and 'ballot issues'; and

d. acted separately from the candidate for governor as an independent political action committee.

The circuit court responded in the affirmative to both of the certified questions.

To fully understand these issues, it is necessary to review the factual underpinnings of the PAC's formation. On January 31, 1992, Charlotte Jean Pritt entered that 1992 May primary election campaign as a gubernatorial candidate. In registering her candidacy with the Secretary of State's office, she certified that she was a registered Democrat and advised that her finance committee would be known as the Pritt for Governor Committee.[3] Ms. Pritt was defeated by incumbent Governor Gaston Caperton during the May 3, 1992, primary election. Other than filing updated financial reports relating to the primary, it appears that the Pritt for Governor Committee has been inactive since the primary election.

On August 25, 1992, Petitioners Young and Jett formed the PAC. In the PAC's "Statement of Organization," Petitioners state their intent "[t]o promote the candidacy of Charlotte Jean Pritt for Governor of West Virginia[.]" Additionally, the PAC advised Respondent Hechler that it would be supporting or opposing other candidates and ballot issues and that the organization would "be active in statewide, county or district political campaigns in West Virginia." When the general election was held on November 3, 1992, Ms. Pritt received 48,873 write-in votes

for governor. This amount constituted 7.4% of all votes cast for the gubernatorial position.

■ Petitioners assert that they are entitled to recognition as a political party based on the language of West Virginia Code § 3–1–8 which states that:

Any affiliation of voters representing any principle or organization which, at the last preceding general election, polled for its candidate for governor at least one percent of the total number of votes cast for all candidates for that office in the state, shall be a political party, within the meaning and for the purpose of this chapter. . . .

Specifically, they maintain that the Write-in Pritt Campaign, acting as a political action committee, constitutes the requisite "affiliation of voters" and that based on the 7.4% of the votes obtained in the 1992 general election, they are statutorily entitled to be recognized as a political party.

Respondent's position is essentially that mere support of a political candidate by a political action committee is not in itself sufficient to acquire the status of an independent political party pursuant to West Virginia Code § 3–1–8. Moreover, Respondent contends that merely casting a write-in vote for a candidate is not sufficient evidence of a desire to affiliate as a political party within the meaning of West Virginia Code § 3–1–8.

■ There can be no question that a state has a legitimate interest in the smooth functioning of the electoral process. *See Storer v. Brown* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974) ("there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes"). This legitimate state interest in overseeing the elective process permits the state to regulate the number of candidates and parties on the ballot, provided that the restrictions imposed are "reasonable[ ] [and] nondiscriminatory." *Anderson v. Celebrezze*, 460 U.S. 780, 788,

---

**3.** The Pritt for Governor Committee was Ms. Pritt's official campaign committee and had no official connection to the PAC.

103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983). Against this well-established foundation of permissible state regulation, however, is the equally well-established tenet that "[t]he right to form a party ... means little if· ... [it] can be kept off the election ballot and thus denied an equal opportunity to win votes." *Williams v. Rhodes*, 393 U.S. 23, 31, 89 S.Ct. 5, 10–11, 21 L.Ed.2d 24 (1968).

In *Socialist Workers Party v. Hechler*, 890 F.2d 1303 (4th Cir.1989), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990), the Fourth Circuit Court of Appeals stated,

> these general principles [concerning ballot access] are not to be interpreted as an open sesame for minor parties and individuals who want to appear on the ballot with the major candidates. 'The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates.'

*Id.* at 1304 (quoting *Anderson*, 460 U.S. at 788–89 n. 9, 103 S.Ct. at 1570 n. 9). In this same decision involving constitutional challenges to West Virginia's election laws,[4] the Fourth Circuit noted,

> The distinctions between the highly restrictive Ohio scheme and West Virginia's are far-reaching. Ohio ruled out independent candidacies; West Virginia does not. The requirements for qualifying as a political party, furthermore, were not only onerous but were virtually impossible for a small party to fulfill. The [United States] Supreme Court had little difficulty in finding such an electoral scheme unconstitu-
>
> tional. *There is nothing about West Virginia's election laws that creates such a crushing burden on minor parties.*

890 F.2d at 1307 n. 1 (emphasis supplied).

Respondent points out a number of salient facts, several of which are stipulated, which impact upon the resolution of this case. The petition filed in this case fails to state that the campaign at any time had the direct or implied consent of Ms. Pritt or her official committee to act on their behalf. The evidence suggests that the campaign acted merely on the authority of the Petitioner co-chairs and not on the authority of anyone else. Ms. Pritt, herself, is currently taking great pains to disassociate herself from the Petitioners and their actions. The parties have stipulated that Ms. Pritt "is a democrat, has always sought and held office as a democrat and has been quoted as saying that she will always be a democrat." She remained a registered Democrat throughout the 1992 gubernatorial campaign and she remains the same today. The parties also stipulated that "Charlotte Jean Pritt never authorized the Write-in Pritt Campaign to take any action on her behalf during either the Primary or General elections of 1992." It is also stipulated that "[a]t the time of the general election, the Write-in Pritt Campaign had no candidate[5] nor a democratically elected hierarchy."

Under the logic employed by Petitioners, any political action committee formed prior to a general election which happens to include as part of its name, the name of a candidate that obtains more than one percent of the vote is automatically entitled to be designated as a political party.[6] We do not

---

4. The constitutional challenges to West Virginia's election laws in *Socialist Workers Party* included the following: the provision that individuals who sign nominating petitions for minor party candidates lose their right to vote in the primary election; the requirement that minor party candidates must file their certificates of candidacy a month before the primary and their nominating petitions the day before the primary; the requirement that a candidate who cannot afford a filing fee submit a petition in lieu of the fee separate from the nominating petition; and the requirement that persons who sign nominating petitions state that they "desire to vote" for the candidate named in the petition. 890 F.2d at 1304.

5. Part of the requirement of West Virginia Code § 3–1–8 is that an independent affiliation of voters have their own gubernatorial candidate.

6. In actuality, there were two political action committees formed to support the Charlotte Pritt campaign. To demonstrate the absurdity of Petitioners' argument, the other political action committee was entitled "Draft Charlotte Pritt for Governor Campaign" and gave as its statement of purpose, "[t]o elect the most beautiful, intelligent, compassionate and imaginative of all possible candidates to the highest state office[.]" Under the Petitioners' theory, this other political action committee should similarly have the same

believe that the argument advanced by Petitioners comports with the intent which underlies the provisions of West Virginia Code § 3–1–8. Moreover, were this the case, as the Respondent accurately argues, we are limited only by our imagination as to the number of political parties that could come into existence through such mechanism.

In analyzing whether a political action committee qualifies as the statutorily-required "affiliation of voters representing any principle or organization" under West Virginia Code § 3–1–8, we note the existence of a separate statutory scheme for placing third parties on the ballot. Pursuant to West Virginia Code § 3–5–23 (1994),

> (a) Groups of citizens having no party organization may nominate candidates for office otherwise than by conventions or primary elections. In such case, the candidate or candidates, jointly or severally, shall file a declaration with the secretary of state if the office is to be filled by the voters of more than one county, ...
>
> ....
>
> (c) The certificate shall be personally signed by duly registered voters, in their own proper handwriting.... The number of such signatures shall be equal to not less than one percent of the entire vote cast at the last preceding general election for the office ... for which the nomination is to be made, but in no event shall the number be less than twenty-five.

This statute has been recognized and upheld by this Court in *West Virginia Libertarian Party v. Manchin*, 165 W.Va. 206, 270 S.E.2d 634 (1980) as providing the method for ballot access for third-party and independent party candidates. Accordingly, this is the preferred statutory mechanism for gaining ballot access for third-party or independent *candidates*, as opposed to establishing a third party "*affiliation of voters*" as described in West Virginia Code § 3–1–8.

 Against this recognized method of gaining ballot access, we now consider whether Petitioners can gain access for the Mountaineer Party through the provisions of West Virginia Code § 3–1–8. At the center of this issue is whether the PAC created by Petitioners constitutes an "affiliation of voters representing any principle or organization." W.Va.Code § 3–1–8. We agree with Respondent's contention that the concept of an "affiliation of voters" necessarily suggests consent or agreement with regard to their representation. Yet, we note that there is no evidence to suggest that those individuals casting votes for Ms. Pritt wished to be affiliated with the PAC's efforts to gain ballot access for a third political party, or to join such a party. Accordingly, the PAC cannot claim to be an "affiliation of voters" or an organization for the purpose of West Virginia Code § 3–1–8 when there is no evidence to suggest that those who voted for Ms. Pritt as a gubernatorial candidate had any other shared intention besides casting a vote for a particular candidate. There is nothing to indicate these voters intended to abandon their party affiliation to become members of a new party.

Accordingly, we hold that a political action committee does not qualify as an "affiliation of voters representing any principle or organization" within the meaning of West Virginia Code § 3–1–8.[7] Based on the reasoning set forth herein, we respond to the certified questions in the negative.

Having answered the certified questions, this case is hereby dismissed from the docket of this Court.

Questions answered;

Case dismissed.

---

right to be designated as another independent party on the ballot.

7. An independent affiliation of voters wishing to form a third party would be in a better position to utilize West Virginia Code § 3–1–8 if they created some organizational framework, such as by-laws or specific statements of principles, in advance of an election; announced their existence and solicited others to affiliate; and placed their own candidate for governor (as opposed to a candidate who identifies herself as a member of the Democratic Party) on the ballot.