IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

**FILED**
**September 15, 2016**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0779

ERIK PATRICK WELLS,

Petitioner/Respondent Below

v.

STATE OF WEST VIRGINIA ex rel. CHARLES T. MILLER,
Prosecuting Attorney for Kanawha County,

Respondent/Petitioner Below

Appeal from the Circuit Court of Kanawha County
The Honorable Charles E. King, Judge
Civil Action No. 16-P-364

AFFIRMED

Submitted: September 7, 2016
Filed: September 15, 2016

Thomas P. Maroney, Esq.
MARONEY, WILLIAMS, WEAVER
& PANCAKE, PLLC
Charleston, West Virginia
Attorney for Petitioner

Charles T. Miller, Esq.
Laura Young, Esq.
Robert William Schulenberg, III, Esq.
Office of the Prosecuting Attorney of
Kanawha County
Charleston, West Virginia
Attorneys for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE DAVIS dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.     "'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 3, *Alden v. Harpers Ferry Police Civil Serv. Comm'n,* 209 W. Va. 83, 543 S.E.2d 364 (2001).

2.     "The constitution, in article IV, section 11, gives wide powers to the legislature to make all reasonable regulations and restrictions as to preparation of ballots and the conduct and returns of elections." Syl. Pt. 4, *Morris v. Bd. of Canvassers of City of Charleston*, 49 W. Va. 251, 38 S.E. 500 (1901).

3.     West Virginia Code § 3-5-7 (2015) requires any person who is eligible and seeks to hold an office or political party position to be filled by election in any primary or general election to file a certificate of announcement declaring his or her candidacy for the nomination or election to the office.  Accordingly, candidates who seek to hold an office or political party position pursuant to West Virginia Code § 3-5-23 (2009) must complete a certificate of announcement in accordance with the provisions of West Virginia Code § 3-5-7.

4. A candidate who is registered and affiliated with a recognized "political party" as defined in West Virginia Code § 3-1-8 (1965) may not become a candidate for political office by virtue of the nomination certificate process outlined in West Virginia Code § 3-5-23 (2009).

5. "The State of West Virginia through its Legislature retains the authority to prescribe reasonable rules for the conduct of elections, reasonable procedures by which candidates may qualify to run for office, and the manner in which they will be elected." Syl. Pt. 4, *Sowards v. County Comm'n of Lincoln Cty.*, 196 W. Va. 739, 474 S.E.2d 919 (1996).

WORKMAN, Justice:

This is an appeal from the circuit court's August 18, 2016, order granting respondent State of West Virginia's (hereinafter "respondent") amended petition for writ of quo warranto, disallowing petitioner Erik Patrick Wells' (hereinafter "petitioner") candidacy for the office of Kanawha County Clerk. The circuit court found that, as a registered member of the Democratic Party, petitioner's candidacy was governed by the provisions of West Virginia Code § 3-5-7 (2015) and that petitioner had failed to comply with its requirements, disqualifying him as a candidate for the office of Kanawha County Clerk.

Based upon our review of the briefs, legal authorities, appendix record, and upon consideration of arguments of counsel, we conclude that West Virginia Code § 3-5-7 is applicable to any person who seeks to hold an office or political party position to be filled by primary or general election. Therefore, in light of petitioner's failure to comply with the requirements of West Virginia Code § 3-5-7, we affirm the circuit court's order granting the petition for writ of quo warranto.

## I. FACTS AND PROCEDURAL HISTORY

On July 18, 2016, petitioner, a registered Democrat, filed a "Candidate's Certificate of Announcement for 2016 Partisan Elections" and paid the required filing fee

1

to the Kanawha County Clerk's office. Petitioner left blank[1] a portion of the form, which states as follows:

> I am a member of and affiliated with the following political party: _____. I am a member of and affiliated with this political party as evidenced by my current voter's registration and I have not been registered as a member of another political party within sixty days of this date. (W.Va. Code § 3-5-7(d)(6))

Subsequently, petitioner filed a "Minor Party or Independent Candidate Nomination Petition," seeking to become a certificate nomination candidate pursuant to West Virginia Code § 3-5-23 (2009). On this form, in the space provided for "Party," the certificate stated: "Independent." Petitioner submitted signatures from 1,019 individuals; the County Clerk invalidated 119 of the signatures, leaving 900 signatures as valid.[2]

On August 10, 2016, respondent filed a petition for writ of quo warranto pursuant to West Virginia Code § 53-2-1 *et seq.* (1923),[3] and the following day filed its amended petition. The circuit court conducted a hearing on this matter on August 12,

---

[1] West Virginia Code § 3-5-7(d) requires this information to be submitted "on a form prescribed by the Secretary of State" and in the form of a "sworn statement before a notary public or other officer authorized to administer oaths[.]" Further, any person who "knowingly provides false information on the certificate is guilty of false swearing[.]" W. Va. Code § 3-5-7(f).

[2] Of those 1,019 individuals signing the petition, 656 were registered Democrats, 135 were registered Republicans, and 137 had no party affiliation.

[3] "A writ of quo warranto, or a writ in the nature of a writ of quo warranto lies to try and determine the right or the title to a public office. The writ will issue against any person who intrudes into or usurps a public office." *State ex rel. Bumgardner v. Mills*, 132 W. Va. 580, 587, 53 S.E.2d 416, 423 (1949) (citations omitted).

2016, during which a key issue was petitioner's failure to fully complete the certificate of announcement, having left his party affiliation blank. During the hearing, petitioner testified that he was and remained a registered Democrat and had voted on May 10, 2016, in the Democratic primary. Petitioner testified that he was running for the office of Kanawha County Clerk as an "independent," as indicated on the "Minor Party or Independent Candidate Nomination Petition." Petitioner further testified that he read and was aware of the requirements imposed on a candidate filing a certificate of announcement, but had not decided to run for office until after the primary election.[4]

By order entered August 18, 2016, the circuit court granted respondent's petition for writ of quo warranto and disallowed petitioner's candidacy for the office of Kanawha County Clerk in the November 8, 2016, general election. Specifically, the circuit court found that petitioner failed to fully complete the certificate of announcement required by West Virginia Code § 3-5-7 and that regardless, as a registered Democrat,

---

[4] Petitioner testified that Carol Bright, a deputy clerk for Kanawha County, told petitioner he could leave his party affiliation blank in the certificate of announcement. However, Ms. Bright testified that petitioner refused to provide that information; therefore, she ultimately told petitioner that the deputy clerk would take the certificate of announcement as presented and that the clerk's office would "deal with it later." Ms. Bright, however, specifically denied telling petitioner that he did not have to complete that portion of the certificate. David Dodd, Chief Deputy County Clerk, testified that he advised Ms. Bright to accept the certificate and that they would "deal with it later." The circuit court found that "the deputy clerks did not act to relieve [petitioner] from fully completing his certificate of announcement, nor could they under the law." We note that petitioner did not assign as error any of the circuit court's findings regarding these factual issues, nor did petitioner argue that estoppel precludes application of the circuit court's legal conclusions as a result.

3

petitioner could not avail himself of the certificate nomination process under West Virginia Code § 3-5-23. As pertained to the certificate of announcement, the circuit court reasoned that

> [b]y failing to include the party affiliation in the certificate of announcement, the . . . [petitioner] created confusion for the voters regarding precisely who is running for office and what party and party philosophies [petitioner] is affiliated with. Further, the failure to include a party affiliation in the certificate of announcement will create an impossible situation for election officials in preparing the ballet [sic] and for voters when voting.

The circuit court stated that if petitioner's name appeared on the ballot as a Democrat, it would create the impression that he was on the ballot because he either won the primary election or had his name placed on the ballot by the Kanawha Democratic Executive Committee or its chairperson. On the other hand, if his name appeared as "independent," it would be inaccurate because petitioner is a registered Democrat. The circuit court further found that West Virginia Code § 3-5-23 was for use by "persons who seek elective office and who are not members of an organized party having a nominating election or a nominating convention."

The circuit court further rejected petitioner's contention that he presented a viable, constitutionally-based "ballot access" challenge because "as a registered Democrat, [petitioner] had access to the ballot" and found that petitioner could have simply followed the various requirements to run for office. Specifically, the circuit court noted that petitioner could have filed a certificate of announcement for county-wide

4

office or pursued having the Kanawha County Democratic Executive Committee place his name on the ballot.[5] This appeal followed.

## II. STANDARD OF REVIEW

Petitioner's appeal raises the issues of the application and scope of West Virginia Code § 3-5-7 and West Virginia Code §§ 3-5-23 and -24. In this regard, we have held that "'[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995)." Syl. pt. 3, *Alden v. Harpers Ferry Police Civil Serv. Comm'n*, 209 W. Va. 83, 543 S.E.2d 364 (2001). Mindful of this applicable standard, we now consider the substantive issues raised by the parties.

## III. DISCUSSION

Petitioner raises three assignments of error. First, petitioner asserts that the circuit court erred in concluding that the certificate of announcement requirements contained in West Virginia Code § 3-5-7(d)(6) are applicable to a candidate seeking

---

[5] Petitioner raised below the issue of his military service, suggesting that he could not have filed to run in the primary because he was deployed. Respondent countered that petitioner was released from active duty on February 16, 2016, well in advance of the March 1, 2016, deadline for a political party's executive committee to act. Respondent further argued that pursuant to the Hatch Act, 5 U.S.C.A. §§ 7321-7326, and under the military regulations as contained in the Department of Defense Directive Number 1344.10, petitioner could have filed to run for office. These issues were not briefed and therefore are not properly before the Court.

nomination by certificate. Second, petitioner contends that the circuit court erred in concluding that, as a registered Democrat, he could not avail himself of the certificate nomination process outlined in West Virginia Code § 3-5-23. Finally, petitioner asserts that in denying petitioner's candidacy, the circuit court denied him ballot access, in violation of the First and Fourteenth Amendments of the United States Constitution and Article III, Sections 7, 16 and 17 and Article IV, Sections 1 and 4 of the West Virginia Constitution.

Before we address petitioner's arguments, we note that the West Virginia Constitution reserves to the Legislature the ability to make laws concerning public officials and the manner in which those officials assume office. In syllabus point four of *Morris v. Board of Canvassers of City of Charleston*, 49 W. Va. 251, 38 S.E. 500 (1901), this Court held: "The constitution, in article IV, section 11, gives wide powers to the legislature to make all reasonable regulations and restrictions as to preparation of ballots and the conduct and returns of elections."[6]

Article IV, section 8 provides that "[t]he Legislature, in cases not provided for in this constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they

---

[6] We further recognize that "[a] State's power to determine how its officials are to be elected is a quintessential attribute of sovereignty." *California Democratic Party v. Jones*, 530 U.S. 567, 590 (2000) (J. Stevens dissenting).

6

shall be elected, appointed and removed." Additionally, Article IV, Section 11 provides that

> [t]he Legislature shall prescribe the manner of conducting and making returns of elections, and of determining contested elections; and shall pass such laws as may be necessary and proper to prevent intimidation, disorder or violence at the polls, and corruption or fraud in voting, counting the vote, ascertaining or declaring the result or fraud in any manner upon the ballot.

This Court is further mindful that the Legislature "inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

## A. Applicability of West Virginia Code § 3-5-7 to certificate nomination candidates under West Virginia Code § 3-5-23

As indicated above, petitioner, a registered Democrat, seeks to be a candidate for the office of Kanawha County Clerk by utilizing the "certificate nomination" process outlined in West Virginia Code § 3-5-23. The statute provides, in pertinent part:

> Groups of citizens having no party organization may nominate candidates who are not already candidates in the primary election for public office otherwise than by conventions or primary elections. In that case, the candidate or candidates, jointly or severally, shall file a nomination certificate in accordance with the provisions of this section and the provisions of section twenty-four of this article.

7

W. Va. Code § 3-5-23(a).[7] The nominating certificate must state the name and residence of each of the candidates; that he or she is legally qualified to hold the office; that the subscribers are legally qualified and duly registered as voters and desire to have the candidates placed on the ballot; and "may designate, by not more than five words, a brief name of the party which the candidates represent and may adopt a device or emblem to be printed on the official ballot." W. Va. Code § 3-5-23(d). Upon fulfillment of these criteria, the statute provides that "[a]ll candidates nominated by the signing of the certificates shall have their names placed on the official ballot as candidates, as if otherwise nominated under the provisions of this chapter." *Id.*

As noted above, the circuit court found that, even assuming petitioner was a proper certificate nomination candidate, he was required to file the certificate of announcement described in West Virginia Code § 3-5-7(d) and because petitioner refused to identify his party affiliation in the certificate of announcement, the certificate was noncompliant and therefore precluded his candidacy.

West Virginia Code § 3-5-7(a) provides as follows:

> *Any person* who is eligible and seeks to hold an office or political party position to be filled by election in any primary *or general election* held under the provisions of this chapter

---

[7] The statute further provides that a person soliciting signatures of duly qualified voters on the nomination certificate must first obtain credentials from the county clerk and that the certificate must be signed by duly registered voters in an amount equal to at least one percent of the entire vote cast in the last general election for the office being sought. W. Va. Code § 3-5-23(b) and (c).

8

> *shall file a certificate of announcement* declaring his or her candidacy for the *nomination or election* to the office.

(emphasis added). Significantly, West Virginia Code 3-5-7(c) states that such certificate of announcement must be filed no earlier than the second Monday in January and no later than the last Saturday in January; petitioner filed his certificate of nomination in July, six months after the time period prescribed in the statute. Moreover, for partisan elections such as the Kanawha County Clerk, the certificate must contain

> the name of the candidate's political party and a statement that the candidate: (A) Is a member of and affiliated with that political party as evidenced by the candidate's current registration as a voter affiliated with that party; and (B) has not been registered as a voter affiliated with any other political party for a period of sixty days before the date of filing the announcement . . .

W. Va. Code § 3-5-7(d). In spite of the broad, compulsory language of the statute requiring *"[a]ny* person" seeking office in a primary *"or general* election" to file a certificate of announcement of his candidacy for the "nomination or *election* to the office," petitioner makes two arguments in support of its inapplicability to his certificate nomination candidacy. W. Va. Code § 3-5-7(a) (emphasis added).

First, petitioner argues that our decision in *State ex rel. Browne v. Hechler*, 197 W. Va. 612, 476 S.E.2d 559 (1996), is dispositive. In *Browne*, the Court held that the 1991 version of West Virginia Code § 3-5-7 applied only to primary elections and therefore certificate nomination candidates were "not required to file a declaration of candidacy pursuant to W. Va. Code § 3-5-7 (1991)." Syl. Pt. 2, in part, *Browne*.

9

Respondent correctly counters, however, that West Virginia Code § 3-5-7 has undergone a critical amendment since that time.

In *Browne*, the Court sought to ascertain the deadline for the filing of a nomination certificate and fee under the 1986 version of West Virginia Code § 3-5-23, which used the terms "declaration"[8] and "certificate" in a manner creating ambiguity as to the filing deadlines. 197 W. Va. at 613-14, 476 S.E.2d at 560-61. Respondent suggested that the "declaration" referred to therein was distinguishable from the nomination certificate and actually referred to the certificate of announcement required by West Virginia Code § 3-5-7. *Id*. at 614, 476 S.E.2d at 561. The *Browne* Court quickly rejected this argument, observing that West Virginia Code § 3-5-7(f) stated that "[t]he provisions of this section shall apply to the *primary election* . . . ." and was therefore "by its own terms, inapplicable" to a certificate nomination candidate, who does not participate in the primary election. *Id.*[9]

This provision of West Virginia Code § 3-5-7, as it existed at the time of *Browne*, seemingly confining applicability to candidates participating in a primary

---

[8] The term "declaration" has since been replaced with "nomination certificate" and the statute rewritten.

[9] The *Browne* Court did not address the opening sentence of the 1991 version of West Virginia Code § 3-5-7 which, like its current incarnation, stated that "[a]ny person who is eligible to hold and seeks to hold an office or political party position to be filled by election in any primary *or general election* . . . shall file a certificate of announcement[.]" (emphasis added).

10

election survived each of the Legislature's various amendments enacted in 1998, 2005, 2007, and 2009. However, the 2015 amendments to the statute eliminated this provision in its entirety. Accordingly, there is no longer any wording contained within the language of the statute stating that its provisions apply exclusively to candidates participating in the primary election. In fact, the sole reference to its applicability is now the long-standing opening statement that the statute and its requirements are mandatory upon *"[a]ny person* who is eligible and seeks to hold an office or political party position to be filled by election in any primary *or general* election[.]" W. Va. Code § 3-5-7(a) (emphasis added).

What this Court is left with, then, is the plain language of West Virginia Code § 3-5-7 which unmistakably makes itself applicable to *all* candidacies, including certificate nomination candidacies, and clearly mandates that all those seeking office in a primary or general election file a statutorily-compliant certificate of announcement. Whether this was the intention of the Legislature in making the 2015 amendments to the statute is not for this Court to speculate: "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 715, 172 S.E.2d 384, 385 (1970). What is clear, however, is that the Court's decision in *Browne* is no longer valid as pertains to this issue in light of the 2015 amendments to West Virginia Code § 3-5-7.

11

Petitioner argues alternatively that West Virginia Code § 3-5-7 is inapplicable to a certificate nomination candidate because such candidacy is governed *exclusively* by West Virginia Code § 3-5-23, which requires no such certificate of announcement and mandates that upon filing of the certificate of nomination, a candidate "shall" be placed on the ballot. W. Va. Code § 3-5-23(d). The Court, however, cannot countenance such a myopic view of our election code. This Court has made clear that

> [s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975). Certainly our state election code presents a comprehensive "code of laws for the establishment, administration and regulation of elections and election procedures in the state of West Virginia." W. Va. Code § 3-1-1 (1963).

Petitioner provides no support for the notion that statutes purporting to have a broad reach become completely inoperable when more specific statutes delineate additional requirements specifically applicable to certain individuals or processes. West Virginia Code § 3-5-23 contains no exclusivity language, nor is there anything inherently inconsistent with requiring a candidate to file both a certificate of announcement pursuant to West Virginia Code § 3-5-7 and a nomination certificate containing all of the required

12

signatures and representations required by West Virginia Code § 3-5-23.  As stated in *Browne*, the certificate of announcement serves to "ensure the orderly administration of . . . elections and to provide notice to the electorate of the identity of candidates[.]"  197 W. Va. at 614, 476 S.E.2d at 561.  Petitioner offers no reason why such goals should be rendered inapplicable to certificate nomination candidates.

Nonetheless, petitioner highlights a purported "conflict" in West Virginia Code § 3-5-7 and § 3-5-23 in support of his suggestion that he is not required to complete the certificate of announcement.  The certificate of announcement requires a candidate to identify, among other housekeeping matters, the date of the election, the office sought, the district, the candidate's legal name, county of residence, and address.  W. Va. Code § 3-5-7(d)(1) through (5).  Subsection (d)(6), however, requires a candidate in a partisan election to identify his or her political party and swear, under oath, that the candidate is a member of and affiliated with that political party and has not been registered as a voter affiliated with any other party for the preceding sixty days.  W. Va. Code § 3-5-7(d)(6).  West Virginia Code §3-5-23(d) provides merely, however, that the nomination certificate "may" designate a party name, device or emblem.  In spite of petitioner's insistence to the contrary, we perceive no appreciable conflict in these provisions, much less one

which would render the provisions of West Virginia Code § 3-5-7(d)(6) wholly inapplicable to a nomination certificate candidate.[10]

The certificate of announcement described in West Virginia Code § 3-5-7 (and in fact the entire statute) pertains to the candidate himself. The certificate seeks information which identifies the candidate, the office for which the candidate is running, and information designed to ensure the candidate is a proper one for the office he or she seeks. The Legislature has made clear in enacting the requirements of West Virginia Code § 3-5-7(d)(6) that voters are entitled to know with which political party, if any, a candidate is affiliated and that the candidate has not been otherwise affiliated in the

---

[10] Petitioner did not assert a specific constitutional challenge to West Virginia Code § 3-5-7(d)(6)'s requirement that he declare his party affiliation in the certificate of announcement; rather, he challenged merely the statutory applicability thereof to his candidacy. Our normal practice, from which we see no reason to depart on this occasion, is to refrain from addressing issues not raised. "'Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes." Syl. Pt. 2, in part, *Harshbarger v. Gainer*, 184 W.Va. 656, 403 S.E.2d 399 (1991).'"

Nonetheless, this Court is cognizant of its decision in *West Virginia Libertarian Party v. Manchin*, 165 W. Va. 206, 270 S.E.2d 634 (1980), which tersely and with little discussion found that the predecessor requirement of West Virginia Code § 3-5-23(d) that a candidate "file a declaration containing the name of the political party he or they propose to represent, its platform, principles or purposes" violated the Equal Protection rights of an *unaffiliated candidate*. As repeatedly noted throughout this opinion, petitioner is not an unaffiliated candidate; he therefore lacks standing to litigate the issue. *See generally Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 95, 576 S.E.2d 807, 822 (2002). Even so, we do not perceive an issue of constitutional dimension with West Virginia Code § 3-5-7(d)(6)'s requirement that all candidates, including unaffiliated candidates, identify their political party, if any. To the extent a candidate is not a "member of and affiliated with," a political party, *i.e.* unaffiliated or "independent," the truthful and complete answer to this inquiry is simply "none."

14

preceding sixty days. The substantial ends of these disclosures is clear: voters are entitled to know the party or principles for which a candidate stands, to the extent a candidate has so affiliated himself or herself, such that they can make a knowledgeable decision in casting their votes. This statute seeks to prevent candidates from engaging in chicanery regarding their political affiliations, if any, designed to inure entirely to their individual political benefit and mislead the electorate. *See Lippitt v. Cipollone*, 337 F. Supp. 1405, 1406 (N.D. Ohio 1971) (upholding similar requirements to preclude candidates from "altering their political party affiliations for opportunistic reasons.").

The provisions of West Virginia Code § 3-5-23, however, are geared toward ascertaining information about the "groups of citizens" who purport to by-pass the primary election and nominate a candidate by certificate. While the certificate itself is required to be filed by the candidate, the provisions of West Virginia Code § 3-5-23 deal virtually exclusively with the qualifications of the citizens who seek to nominate the candidate and the certificate by which they seek to do so. Subsection (b) governs the credentialing required of those who solicit or canvass voter signatures on the nomination certificate. Subsection (c) details the criteria for becoming a signator of the nomination certificate and the number of such signators required. Subsections (e) and (f) outline the duties of the Secretary of State to investigate the "validity of the *certificates* and the *signatures* thereon" and any penalties for violation of the statute. Subsection (d), which petitioner suggests "conflicts" with the requirements of a candidate to aver his or her registered party affiliation provides simply that the *group of citizens* which seeks to

15

nominate a candidate "may" designate a name or emblem for themselves. It does *not* speak to the registered party affiliation, if any, of the candidate.

Petitioner offers absolutely no argument or rationale before this Court as to why requiring the certificate of announcement delineated in West Virginia Code § 3-5-7 of certificate nomination candidates under West Virginia Code § 3-5-23 is impractical, impossible, or inequitable. Indeed he likely cannot inasmuch as, despite his insistence that he was not required to complete a certificate of announcement, it was he who took it upon himself to file one, albeit incomplete and untimely. Any inefficacies in requiring nomination certificate candidates to complete the form are not only immaterial to our application of the statute as drafted by the Legislature, but merely theoretical.[11] In fact, we note that the certificate of announcement itself as promulgated by the Secretary of State appears to expressly contemplate execution by certificate nomination candidates who effectively by-pass the primary election. The Secretary of State's Official Form C-1 entitled "Candidate's Certificate of Announcement for 2016 Partisan Elections" requests the candidate to indicate the "Date of Election" and requests the candidate to "Check one" of the following: primary, general, or unexpired term. Should the form be

---

[11] Insofar as filing deadlines are concerned, West Virginia Code § 3-5-7 simply requires a nomination certificate candidate to announce his or her candidacy in January. Such candidate still has until August 1 to collect the signatures required on the nomination certificate. This Court has cited with approval cases in which courts have rejected challenges to election laws affecting third-party or independent candidates based on the argument that such provisions require the candidate anticipate his or her candidacy too early. *See Manchin*, 165 W. Va. 206, 223-226, 270 S.E.2d 634, 644-646 (collecting cases).

16

applicable only to those candidates participating in the primary election, there would be no need to make an allowance for a candidate to check only "general" election, unless that candidate may by-pass the primary and run only in the general election as nomination certificate candidates do.

The critical importance of the frank disclosure of a candidate's party affiliation is well-illustrated in the case at bar. As indicated above, petitioner is a registered Democrat, yet seeks to run by nomination certificate as an "independent." Although this term is commonly used to refer to individuals who eschew party affiliation, West Virginia does not recognize an official designation of "Independent." Rather, those who are "unaffiliated" are registered as such.[12] To run as unaffiliated or "independent," petitioner may not merely declare himself "independent" or lacking in party affiliation; he must change his registration to reflect accordingly. West Virginia Code § 3-5-7(d)(6) requires that he declare his party affiliation, if any, and aver that he has not otherwise

---

[12]*See* W. Va. Code § 3-2-5 (d)(2) (2013) (identifying requested information for voter registration application including "[t]he applicant's choice of political party affiliation, if any, or an indication of no affiliation."); *see also* West Virginia Secretary of State Natalie E. Tennant, "Voter Registration Totals," http://www.sos.wv.gov/elections/history/Pages/Voter_Registration.aspx (last visited September 14, 2016) ("'No Party' refers to individuals who specifically do NOT affiliate themselves with any particular party and are sometimes commonly referred to as 'Independents.'"); "West Virginia Voter Registration Application," West Virginia Secretary of State, Natalie E. Tennant, http://www.sos.wv.gov/elections/forms/Documents/Forms%20-%20Voter/mail%20in%20voter%20registration%20application.pdf (last visited September 14, 2016) (designating six options for "party choice": Democratic, Republican, Mountain, Libertarian, unaffiliated, or other").

17

been affiliated in the 60 days preceding the filing. This Court has observed that such requirements "promote political stability, preserve party integrity . . . and prevent voter confusion." *State ex rel. Billings v. City of Point Pleasant*, 194 W. Va. 301, 307, 460 S.E.2d 436, 442 (1995); *see also Bendinger v. Ogilvie*, 335 F. Supp. 572, 575 (N.D. Ill. 1971) (noting that without such requirements "party swapping and changing might become so prevalent that the average political party could no longer function properly").

However, upon filing his certificate of announcement—six months late— petitioner failed or refused to identify his political party, thereby wholly usurping the paramount purpose of the nomination certificate. On the nomination certificate and in sworn testimony, petitioner purported to identify as having no party affiliation or "independent," all while maintaining his registered Democrat status. Simply put, petitioner is a registered Democrat and any attempt to otherwise identify himself or "disaffiliate" with the Democratic party can only be accomplished by changing his registration; to permit otherwise would perpetrate a fraud on the electorate. As we have previously stated, "the State's interests in preserving the integrity of the political process . . . . are put at risk by candidates who skip from one party to another just prior to an election campaign to take advantage of a political opportunity." *Billings*, 194 W. Va. at 308, 460 S.E.2d at 443. If "skipping" from party to party to take advantage of a political opportunity puts the State's election interests at risk, it is fairly inarguable that allowing a candidate to masquerade as something he is not makes an utter mockery of those interests.

18

The statute as currently constituted, requiring all candidates to file a certificate of announcement in January, appears to reflect a Legislative intent that voters and candidates should know at the outset who is running for elected office. Certificate nomination candidates then obviously have until August 1—an additional approximate six months—to collect the signatures necessary to secure their nomination. This prevents certificate nomination candidates from first emerging near the end of the election season to the surprise of an unwitting recognized political party candidate.

We therefore hold that West Virginia Code § 3-5-7 requires any person who is eligible and seeks to hold an office or political party position to be filled by election in any primary or general election to file a certificate of announcement declaring his or her candidacy for the nomination or election to the office. Accordingly, candidates who seek to hold an office or political party position pursuant to West Virginia Code § 3-5-23 must complete a certificate of announcement in accordance with the provisions of West Virginia Code § 3-5-7. It is undisputed that petitioner filed his certificate of announcement six months late and that when he did so, his failure to state his political party made his untimely filing also incomplete. Therefore, we conclude that the circuit court committed no reversible error in disallowing his candidacy.

**B.     *Certificate Nomination Candidacies by Recognized Political Party Members***

Our above holding notwithstanding, we turn now to petitioner's argument that the circuit court erred in finding that, as a registered Democrat, the certificate

nomination process contained in West Virginia Code § 3-5-23 was not available to him. Although effectively unnecessary to the resolution of this matter given our above holding, the Court chooses to consider this properly raised issue given its importance. *See generally* Syl. Pt. 1, *Israel by Israel v. West Virginia Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989) (permitting consideration of issues presenting "sufficient collateral consequences" resulting from failure to address "questions of great public interest"). As noted above, the circuit court found that the certificate nomination process is available only to third-party or independent candidates, rather than individuals affiliated with a recognized political party[13] who neglect or refuse to participate in the primary process or seek nomination by the executive committee of their party or convention. [14]

Without question, this Court has historically recognized West Virginia Code § 3-5-23 as "providing the method for ballot access for *third-party and independent*

---

[13] As utilized herein, the term "recognized political party" should be read to include those parties which qualify as a "political party" as defined by West Virginia Code § 3-1-8. *See* West Virginia Secretary of State, Natalie E. Tennant, "Recognized Political Parties in WV," http://www.sos.wv.gov/elections/candidates-committees/Pages/Recognized-Political-Parties-in-WV.aspx (last visited September 14, 2016) (identifying current recognized political parties as: Democratic, Republican, Mountain, and Libertarian).

[14] West Virginia Code 3-5-4 requires nomination by primary election of the candidates of "each political party." Vacancies in candidacy may be filled by political party executive committees pursuant to West Virginia Code 3-5-11(c). Political parties polling at less than ten percent of the total vote for Governor at the preceding general election may nominate candidates by party convention per West Virginia Code § 3-5-22.

20

*party candidates*." *Write-In Pritt Campaign v. Hechler*, 191 W. Va. 677, 681, 447 S.E.2d 612, 616 (1994) (emphasis added). Moreover, in *Manchin*, 165 W. Va. at 222, 270 S.E.2d at 644, this Court stated that the statute "constitute[s] a method for *third-party or independent candidates* to gain access to the general election ballot . . . . [and] that the petition process serves as the functional equivalent of a primary election." (emphasis added). Notably, the West Virginia Secretary of State's official credentialing form and nomination petition expressly state that they are for "independent" or "minor party" candidates.[15] There is nothing on these forms remotely suggesting this process is for use by individuals with recognized political party affiliation.

The language of West Virginia Code § 3-5-23 presents some ambiguity in that it does not expressly forbid a member of a recognized political party from becoming a certificate nomination candidate. However, the language of the statute plainly suggests that it is a mechanism by which only unaffiliated or minor party candidates may enter the election process. In fact, the statute begins with the statement that "[g]roups of citizens

---

[15] The face of the State of West Virginia "Official Credentials" Form P-1, states "As prescribed by WV Code §3-5-23 Authorization to Solicit Petition Signatures for Independent and Minor Party Candidates in the _____ Election." The "Nomination Petition" Form P-3 itself is entitled "State of West Virginia Minor Party or Independent Candidate Nomination Petition for the ___ General Election" and notes at the bottom "Issued by the Office of the Secretary of State (WV Code §3-5-23)". *See also* West Virginia Secretary of State Natalie E. Tennant, "No Party Candidates," http://www.sos.wv.gov/elections/candidates-committees/Pages/nopartyaffiliation.aspx (last visited September 14, 2016) ("Citizens who want to run independently or under the banner of a minor party must petition the voters within the state by gathering signatures to get on the General Election ballot).

having no party organization may nominate candidates who are not already candidates in the primary election for public office . . . ." The use of the phrases "no party organization" and reference to candidates "who are not already candidates in the primary election" unquestionably suggests that it is for use by candidates who do not belong to one of the recognized "political part[ies]" in West Virginia. *See* W. Va. Code § 3-1-8 (1965) ("Any affiliation of voters representing any principle or organization which, at the last preceding general election, polled for its candidate for Governor at least one percent of the total number of votes cast for all candidates for that office in the state, shall be a political party . . ."). Moreover, subsection (d) permitting the designation "by not more than five words, a brief name of the party which the candidates represent and may adopt a device or emblem to be printed on the official ballot" further suggests that the statute is designed for independent or third party candidates, recognized party candidates having no need to effectively "create" a name, emblem or device to reflect their party.

Having determined that the statute is ambiguous, we turn then to our canons of statutory construction. This Court has repeatedly held that "in the interpretation of a statute, the legislative intention is the controlling factor; and the intention of the legislature is ascertained from the provisions of the statute by the application of sound and well established canons of construction." *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 144, 107 S.E.2d 353, 358 (1959). Critically,

> [t]he only mode in which the will of the legislature is spoken is in the statute itself.  In the construction of statutes, it is the legislative intent manifested in the statute that is important and *such intent must be determined primarily from the language of the statute. . . .* and the general rule is that *no intent may be imputed to the legislature other than that supported by the face of the statute itself. . . ..* A statute is to be taken, construed and applied in the form in which it is enacted.

*Id*. at 144-45, 207 S.E.2d at 358. (emphasis added).  As we previously stated herein, "statutes which have common purpose will be regarded in *pari materia* . . . [and] a court should . . . review the act or statute in its entirety to ascertain legislative intent properly." Syl. Pt. 5, in part, *Fruehauf Corp*., 159 W. Va. 14, 217 S.E.2d 907.  As the Supreme Court of Massachusetts observed in reference to similar "imprecisions" in its election laws,

> [t]hey simply goad us to undertake a holistic evaluation of the election law regime, and to ascertain as we must "the intent of the statute from all its parts and from the subject matter to which it relates." *DiGiacomo v. Metropolitan Prop. & Cas. Ins. Co*., 66 Mass.App.Ct. 343, 346, 847 N.E.2d 1107 (2006). *See Sterilite Corp. v. Continental Cas. Co., supra* at 839, 494 N.E.2d 1008 (courts "should not accept the literal meaning of the words of a statute without regard for that statute's purpose and history"). Thus, we turn to the statutory scheme "as a whole," *Wolfe v. Gormally, supra*, mindful that "[t]he general purpose of the Legislature in enacting the statutes regulating . . . elections was to make a reasonably consistent and harmonious body of law . . . which should have the final result of filling the offices required by law." *Thacher v. Secretary of the Commonwealth*, 250 Mass. 188, 190, 145 N.E. 256 (1924).

*Libertarian Assoc. of Mass. v. Sec'y of the Commonwealth*, 969 N.E.2d 1095, 1105-06 (2012).

23

In examining the election laws *in pari materia*, it becomes apparent that it was the Legislature's intention that West Virginia Code § 3-5-23 was for use exclusively by unaffiliated or minor party candidates. Our election code provides that "[a]t each primary election, the candidate or candidates of each political party"—which quite obviously includes the Democratic party—"shall be nominated by the voters of the different political parties . . . [by a] plurality of the votes cast[.]" W. Va. Code § 3-5-4(a). Quite simply, members of recognized political parties are to be nominated by their party during the primary election. In view of the fact that the primary process is available only to candidates of "each political party," individuals who do not belong to these parties, as defined by statute, or any minor political party ostensibly have no means of entering the election process in absence of the provisions of West Virginia Code § 3-5-23.

West Virginia Code § 3-5-23, therefore, provides for the certificate nomination process and quite understandably reads in terms of groups of citizens who "hav[e] no party organization" and candidates who "are not already candidates in the primary election." W. Va. Code § 3-5-23(a). The absence of any provision even *suggesting* that the certificate nomination process is available to a recognized party candidate compels a conclusion to the contrary. As noted above, "no intent may be imputed to the legislature other than that supported by the face of the statute itself." *Gen. Daniel Morgan Post No. 548,* 144 W. Va. at 145, 107 S.E.2d at 358. This Court therefore may not impute the availability of the certificate nomination process to a

24

recognized party candidate inasmuch as the face of the statute quite simply does not support any such usage.

The evolution of the statute lends further credence to our conclusion that it was not designed for, and therefore does not permit, a member of a recognized political party to avail himself of its process. The 1916 version of the statute provided that nomination by certificate was available to "[p]olitical parties having *national organization*," but having cast less than ten percent of the total vote cast for governor at the general election. W. Va. Code § 3-5-23 (1916) (emphasis added).[16] Clearly, this

---

[16] An appreciation of how substantially West Virginia Code § 3-5-23 differed from the current version of the statute in its earliest incarnation is critical to placing our case of *George v. Board of Ballot Comm'rs*, 79 W. Va. 213, 90 S.E. 550 (1916), into its proper context. *George* addressed whether a Republican candidate who was defeated in the primary election could then run as the nomination certificate candidate of the "Independent Republican Party." *Id.* The Court noted that "[a]s to whether [the candidate] may have been previously a candidate for nomination by another party, or may be a candidate of some party other than named in the certificate, the statute is silent." *Id.* at 215, 90 S.E. at 551. With respect to its intended reach, the statute at that point provided simply that "[c]andidates for public office may be nominated otherwise than by direct primary election." W. Va. Code § 3-5-23 (1915). There was no mention, as the statute currently contains, of "groups of citizens having no party organization," or nomination of candidates "who are not already candidates in the primary election." That the Court in *George* concluded that the statute's silence would not preclude such candidacy is fairly immaterial to the case at bar as we now have additional direction on the face of the statute suggesting its proper application.

Similarly, nor does our extraordinarily brief case of *State ex rel. Frazier v. Board of Ballot Comm'rs of Wayne County*, 112 W. Va. 650, 166 S.E. 363 (1932), compel a different conclusion. In *Frazier*, a candidate who had likewise been defeated in the primary sought to utilize the nomination certificate process to reach the general election ballot. *Id.* at 650, 166 S.E. at 364. The Court found that Frazier's nomination certificate was not timely filed and therefore his candidacy was precluded. *Id.* at 651, 166 S.E. at (continued . . .)

25

language contemplates minor party candidates.  Presumably in view of the fact that the statute, as then constructed, did not appear to allow for unaffiliated candidates, the statute was amended in 1941 to make itself available to "groups of citizens having *no* party organization[.]"  W. Va. Code § 3-4-29 (1941) (emphasis added).

Not only is this conclusion consistent with the statutory scheme and compelled by our canons of statutory construction, its equity is apparent.  In light of our above conclusion that candidates must file a certificate of announcement declaring their party affiliation, to permit recognized political party candidates to then by-pass the primary and use the nomination certificate process allows him or her to then appear on the ballot ostensibly as the candidate of one of the recognized parties.  To suggest that this would create voter confusion is putting it mildly.  These requirements seek to avoid "political opportunism which is [] likely to threaten the State's interests", *Billings*, 194 W. Va. at 308, 460 S.E.2d at 443, and are necessary to maintain "order, rather than chaos" in the nomination process.  *Storer v. Brown,* 415 U.S. 724, 730 (1974).  As in this case, petitioner was a registered Democrat, yet held himself out for purposes of obtaining nomination certificate signatures as "independent."  Accordingly, to allow him to appear on the ballot as "independent" or "unaffiliated" is patently false; to allow him to appear on the ballot as "Democrat" suggests that he is his party's nominee—also patently false.

---

364.  The Court did not address, in any fashion, the propriety of an unsuccessful primary candidate's use of the certificate nomination process.

26

These considerations inexorably lead to the conclusion that in order to "maintain[] the integrity of different routes to the ballot and [] stabiliz[e] the political system," West Virginia Code § 3-5-23 is available only to unaffiliated or minor party candidates. *Polly v. Navarro*, 457 So.2d 1140, 1143 (Fla. App. 1984). Plainly, this same conclusion was reached by the State's chief elections official, as evidenced by the form promulgated by her office entitled "Minor Party or Independent Candidate Nomination Petition."[17] We therefore hold that a candidate who is registered and affiliated with a recognized "political party" as defined in West Virginia Code § 3-1-8 may not become a candidate for political office by virtue of the nomination certificate process outlined in West Virginia Code § 3-5-23.

## C.     *Constitutional Issues*

Petitioner asserts that he has fully complied with the substantive and procedural requirements of West Virginia Code §§ 3-5-23 and -24, and therefore has the fundamental constitutional right to ballot access through the signature petitions. Petitioner maintains that his right to become a candidate for public office is a fundamental right, *see Garcelon v. Rutledge*, 173 W. Va. 572, 318 S.E.2d 622 (1984), and there is nothing preventing him, a registered Democrat, from running as an

---

[17] West Virginia Code of State Regulations § 153-26-5 provides that "[o]nly forms which satisfy the prescribed statutory requirements shall be authorized by the Secretary of State as the official election forms" and that the Secretary of State "shall amend any official election form when it is necessary to conform the form with statutory requirements[.]"

27

unaffiliated candidate pursuant to the provisions set forth in West Virginia Code § 3-5-23. He reminds this Court that candidates' rights are necessarily tied to voters' rights. *See Bullock v. Carter*, 405 U.S. 134, 143 (1972). Petitioner states that the circuit court's decision effectively denied 900 Kanawha County voters the right to nominate and vote in the general election for a candidate of their choice.

Respondent counters that Petitioner is not being denied access to the general election ballot because of any arbitrary and capricious action by those who supervise the election process and ballot for Kanawha County elections. Rather, Respondent maintains that petitioner should not be included on the general election ballot because he chose to ignore all of the options which would have permitted him to be on the ballot as a representative of the party to which he belongs, the Democratic party. Having decided at the last minute to fling his "Democratic hat into the ring," petitioner failed to change his registration to unaffiliated at least sixty-one days before filing his certificate of candidacy under West Virginia Code § 3-5-7; he compounded that problem by refusing to fully complete the Candidate's Certificate of Announcement, leaving his party affiliation blank.

In *Anderson v. Celebrezze,* 460 U.S. 780, 789 (1983), and *Burdick v. Takushi,* 504 U.S. 428, 433-34 (1992), the United States Supreme Court established a balancing test to evaluate challenges to state ballot access requirements:

A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.

*Burdick,* 504 U.S. at 434 (citation and internal punctuation omitted). The required analysis "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.* For "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Norman v. Reed,* 502 U.S. 279, 289 (1992)). For "reasonable, nondiscriminatory restrictions," the "State's important regulatory interests are generally sufficient to justify the restrictions." *Id.* (citation and internal punctuation omitted).

Without question, "[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights." *Anderson*, 460 U.S. at 786. Nonetheless, "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates." *Id*. at 787. "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer,* 415 U.S. at 730.[18] In syllabus point four of

---

[18] In *Storer,* the United States Supreme Court upheld a California election statute that denied ballot access to an independent candidate seeking elective public office if the
(continued . . .)

29

*Sowards v. County Comm'n of Lincoln Cty.*, 196 W. Va. 739, 474 S.E.2d 919 (1996), we

held:

> The State of West Virginia through its Legislature retains the authority to prescribe reasonable rules for the conduct of elections, reasonable procedures by which candidates may qualify to run for office, and the manner in which they will be elected.

candidate had a registered affiliation with a qualified political party within one year prior to the immediately preceding primary election. *Id.* at 736. In finding California's disaffiliation requirement constitutional, the Supreme Court stated as follows:

> The requirement that the independent candidate not have been affiliated with a political party for a year before the primary is expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot. It involves no discrimination against independents.
>
> . . . .
>
> The general election ballot is reserved for major struggles; it is not a forum for continuing intraparty feuds. The provision against defeated primary candidates running as independents effectuates this aim, the visible result being to prevent the losers from continuing the struggle and to limit the names on the ballot to those who have won the primaries and those independents who have properly qualified. The people, it is hoped, are presented with understandable choices and the winner in the general election with sufficient support to govern effectively.
>
> . . . [The disaffiliation statute] protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot. It works against independent candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an "independent" candidate to capture and bleed off votes in the general election that might well go to another party.

*Storer,* 415 U.S. at 733-35.

While he raised a constitutional argument as an assignment of error, petitioner does not set forth constitutional challenges to any *specific* provision of our State's election code. In particular, he fails to advance the argument that the January deadline set forth in West Virginia Code § 3-5-7 for the filing of a certificate of announcement creates a burden that falls unequally to a candidate seeking ballot access through West Virginia Code § 3-5-23. In the same fashion, petitioner does not assert that the substantive requirements imposed by West Virginia Code § 3-5-7 impose any particular burden on those candidates.[19]

Instead, petitioner contends that groups of citizens under West Virginia Code § 3-5-23 are free to nominate any qualified citizen and there is no compelling state interest in requiring their candidate to file a certificate of announcement under West Virginia Code § 3-5-7. On this issue, petitioner confuses the right of citizen voters with

---

[19] In *Billings*, this Court did address a specific constitutional challenge to the disassociation requirement of West Virginia Code § 3-5-7, and held that:

> The provision in W. Va. Code, 3-5-7(b)(6) (1991), which effectively disqualifies from running for political office individuals who change their political party affiliation within sixty days of filing their announcements of candidacy, is necessary to accomplish the compelling governmental interest in preserving the integrity of the political process, promoting party stability, and avoiding voter confusion. The provision, therefore, does not violate either the fundamental right of candidacy or the right to change political party affiliations.

Syl. Pt. 4, *Billings*, 194 W. Va. 301, 460 S.E.2d 436.

his own and therein misapprehends the proper test for reasonable, nondiscriminatory regulations on the candidate. *See Timmons*, 520 U.S. at 358-59 (noting state need not establish that ballot access restrictions are narrowly tailored and necessary to promote its interests unless restrictions severely burden rights). Ultimately, the focal point of our inquiry is whether a "reasonably diligent" candidate can be expected to satisfy the requirement. *See Storer,* 415 U.S. at 742. In this regard, petitioner has failed to establish or even argue that he could not satisfy the requirements set forth in West Virginia Code § 3-5-7. He simply maintains those requirements are inapplicable to his candidacy. As discussed above, we reject that argument because it goes against the plain language of the statute.

We do not disagree with petitioner's claim that pursuant to West Virginia Code § 3-5-23, a group of citizens has the right to associate together to express their support for a candidate and select its "standard bearer." Such a group would have similar constitutional protections as those who are members of a majority political party because the freedom of association protected by the First and Fourteenth Amendments includes political organizations.[20] *Elrod v. Burns,* 427 U.S. 347, 357 (1976); *Buckley v. Valeo,* 424

_____

[20] The United States Supreme Court has recognized the special place occupied by alternative candidates in our political system. In *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979), Justice Marshall, writing for the majority, emphasized the important rights implicated by restrictions on access to the ballot and the role that third parties play in the exercise of those rights:

(continued . . .)

32

U.S. 1, 15 (1976). "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Kusper v. Pontikes,* 414 U.S. 51, 57 (1973). The First Amendment protects not only an individual's right to associate with the political party of his or her choice, it also protects citizens' right "to band together in promoting among the electorate candidates who espouse their political views." *See California Democratic Party,* 530 U.S. at 574 (2000) (holding California's proposition which converted State's primary election from closed to blanket primary in which voters could vote for any candidate regardless of voter's or candidate's party affiliation violated political parties' First Amendment right of association); *Clingman v. Beaver*, 544 U.S. 581, 600 (2005) (O'Connor, J., concurring) ("constitutional protection of associational rights is especially important in th[e] context [of primary elections] because the aggregation of votes is, in some sense, the essence of the electoral process. To have a meaningful voice in this process, the individual voter must join together with like-minded others at the polls. And the choice of who will participate in selecting a party's candidate obviously plays a critical role in determining both the party's message and its prospects of success in the electoral contest.").

---

> The States' interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the political development of the Nation. Abolitionists, Progressives, and Populists have undeniably had influence, if not always electoral success. As the records of such parties demonstrate, an election campaign is a means of disseminating ideas as well as attaining political office.

*Id*. at 185.

It does not follow, though, that a third party or unaffiliated group of citizens who nominates a candidate pursuant to the provisions set forth in West Virginia Code § 3-5-23 is absolutely entitled to have its nominee appear on the ballot. *See Libertarian Party of New Hampshire v. Gardner*, 759 F. Supp. 2d 215, 225 (D.N.H. 2010), *aff'd*, 638 F.3d 6 (1st Cir. 2011) (holding right to nominate candidate does not translate into right to control whose name appears on election ballot). A particular candidate might be ineligible for office, unwilling to serve, or, as here, fail to comply with the State election law. "It seems to us that limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Burdick*, 504 U.S. at 440 n.10.

Accordingly, we agree with respondent that this is not a ballot access case. As discussed more fully above, petitioner, a registered Democrat, had the opportunity to seek ballot access through the provisions of West Virginia Code 3-5-7 but simply failed to do so.

34

## IV.    CONCLUSION

For the reasons stated herein, we therefore affirm the circuit court's August 18, 2016, order granting respondent's amended petition for writ of quo warranto, disallowing petitioner's candidacy for the office of Kanawha County Clerk, in the November, 2016 general election.

Affirmed.